ALLSTATE INSURANCE COMPANY,
(Third Party Defendant)
Appellant,

v.

LARKIN'S BODY SHOP AND AUTO
CARE, INC. d/b/a Larkin Auto Sales
(Defendant and Third Party Plaintiff),
Kathy Andruniak (Plaintiff), Nathan
Andruniak (Third Party Defendant), and
Jeffrey Springer (Third Party Defendant), Appellees.

No. 32A05–9501–CV–1.

Court of Appeals of Indiana.

Dec. 17, 1996.

Rehearing Denied April 22, 1997.

Kimberly E. Howard, Smith, Maley &
Douglas, Indianapolis, for Appellant.

Divina K. Westerfield, Westerfield & Associates, Carmel, for Appellees.

## OPINION

RUCKER, Judge.

When Kathy and Nathan Andruniak sued Larkin's Body Shop and Auto Care, Inc. ("Larkin") for selling them a previously wrecked truck without disclosing that fact to. them, Larkin filed a third party action against Allstate Insurance Company seeking indemnity. According to Larkin, Allstate was responsible for obtaining a salvage title for the truck which it failed to do. After a bench trial the trial court entered judgment in favor of Larkin, and Allstate now appeals raising several issues for our review. We restate one issue which is dispositive: under provisions of the Salvage Motor Vehicles Act, is an insurance company required to apply for a certificate of salvage title for a wrecked automobile even though the company never obtained ownership of the automobile? We think not and therefore reverse.[1]

The essential facts are these. In September 1990 Jeffrey Springer was involved in an automobile collision with Edward Becker who was insured by Allstate Insurance Company. Springer submitted a claim to Allstate concerning damage done in the collision to his 1988 Toyota truck. Allstate investigated the claim and determined the cost of repair exceeded the truck's fair market value. Essentially Allstate concluded the truck was a total loss. As a result Allstate issued Springer a settlement check in the amount of $5,486.93. The check represented the fair market value of the truck less $500.00 in salvage value. Springer kept the truck and its certificate of title. Thereafter Springer sold the truck to Larkin. Larkin made repairs on the truck, sold it to Kathy Andruniak for use by her son Nathan Andruniak, and gave her a certificate of title. At no time did the certificate of title indicate that the truck was a salvage vehicle, nor was the certificate of title ever forwarded to the Indiana Bureau of Motor Vehicles to be reissued as a salvage title.

Shortly after purchase the Andruniaks began experiencing difficulty with the truck. Among other things the frame was bent causing rapid tire wear, and the drive shaft was bent and positioned dangerously close to the gas tank. In May 1992 Kathy Andruniak filed a complaint against Larkin. Essentially the complaint alleged that Larkin failed to disclose that the truck was a salvage vehicle, and that Larkin did not comply with applicable provisions of the Salvage Motor Vehicles Act which required Larkin to obtain a certificate of salvage title for the truck. Larkin answered the complaint and also filed a third party action against Nathan Andruniak, Jeffrey Springer, and Allstate Insurance Company. The claim against Nathan was based on negligence for allegedly operating the truck in an unsafe manner; the claim against Springer was based on fraud for allegedly failing to disclose that the truck had been declared a salvaged vehicle; and the claim against Allstate was one for indemnity predicated on the theory that Allstate was responsible for procuring a certificate of salvage title for the truck.

After motions for summary judgment were first granted and then denied upon reconsideration, the case proceeded to trial before the court. At conclusion the trial court entered judgment which was later amended when the parties filed motions to correct errors. Ultimately the trial court entered judgment in favor of Kathy Andruniak on her complaint against Larkin and entered judgment in favor of Larkin on its third-party indemnity claim against Allstate. As for the remainder of Larkin's third party claims, the trial court entered judgment in favor of Jeffrey Springer and Nathan Andruniak. Allstate now appeals.

At the heart of this appeal is the interpretation of certain provisions of Ind.Code § 9–22–3–3 *et seq.*, the Salvage Motor Vehicles Act, which provides in part:

(a) A certificate of salvage title is required for a motor vehicle, motorcycle, semitrail-

---

**1.** Appellant's motions to strike Appellee's amended brief and the affidavit of Steve Larkin are · denied.

er, or recreational vehicle that meets either of the following criteria:

(1) An insurance company has determined that it is economically impractical to repair the wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle and has made an agreed settlement with the insured or claimant.

(2) The cost of repairing the wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle exceeds seventy percent (70%) of the fair market value immediately before the motor vehicle, motorcycle, semitrailer, or recreational vehicle was wrecked or damaged.

I.C. § 9–22–3–3(a). The foregoing section applies to "[a]n insurance company or other person that has *acquired* a wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle that meets at least one (1) of the criteria set forth [above]." Ind.Code § 9–22–3–11(a). (emphasis added).

In this case there is no question concerning the applicability of section one (1) of I.C. § 9–22–3–3(a). Allstate determined that it was economically impractical to repair the 1988 Toyota truck, a motor vehicle, and thus entered into an agreed settlement with the claimant, Jeffrey Springer. The debate is joined over the question of whether Allstate ever "acquired" the damaged truck as the term is used in Ind.Code § 9–22–3–11(a). According to Allstate the term "acquire" denotes ownership and possession. Therefore, the argument continues, because Allstate never obtained ownership of the truck, it never acquired the truck. Larkin counters that once Allstate determined the truck was totaled and tendered a settlement check for it, the company constructively possessed the truck thereby acquiring it and thus had a duty to obtain a salvage title.

■ When called upon to interpret a statute our threshold inquiry is whether the statute is ambiguous. This is so because absent ambiguity the court cannot interpret a statute or substitute words to fit within a construction different from that which the legislature clearly and expressly intended. *Joseph v. Lake Ridge School Corp.,* 580 N.E.2d 316 (Ind.Ct.App.1991), *trans. denied.* A statute is ambiguous when the wording

thereof "arguably supports either of the competing interpretations advocated by the parties." *Miller v. Bryant,* 644 N.E.2d 188 (Ind. Ct.App.1994), *trans. denied.* Because the term "acquire" is reasonably susceptible to more than one construction, either of the parties' interpretations is plausible. Therefore an ambiguity exists which requires this court to construe the statute to determine the apparent intent of the legislature.

■ When construing a statute's meaning, we look first to the language of the statute itself, and where a word is not defined by statute we use its plain and ordinary meaning. *Indiana Dept. of Natural Resources v. Peabody Coal Co.,* 654 N.E.2d 289, 295 (Ind.Ct.App.1995). However where the plain language of the statute does not clearly resolve the issue, and there is no prior binding interpretation, we rely on other tenants of statutory construction. One such tenant provides that when a statute contains certain language which is later deleted, we presume that the legislature was cognizant of the presence and meaning of the language and intended by its decision to change the law. *Sullivan v. Day,* 661 N.E.2d 848, 863 (Ind.Ct. App.1996), *reh'g denied; Meier v. American Maize–Products Co., Inc.,* 645 N.E.2d 662 (Ind.Ct.App.1995); *First Federal Savings Bank of Indiana v. Galvin,* 616 N.E.2d 1048 (Ind.Ct.App.1993), *trans. denied.* In this case the predecessor to Ind.Code § 9–22–3–3 and § 9–22–3–11 read in relevant part:

When an insurance company has declared that it is economically impractical to repair a wrecked or damaged motor vehicle, semitrailer or recreational vehicle, and has made an agreed settlement with the insured or claimant, or when the insurance company has made and paid an agreed settlement for the loss of a stolen motor vehicle, semitrailer or recreational vehicle, *the company shall receive a properly assigned certificate of title from the owner or lienholder. The insurance company shall then apply to the bureau of motor vehicles within ten (10) days after receipt of the certificate of title for a salvage title* on all salvage or stolen vehicles which are subject to this chapter. The insurance company shall surrender the certificate of title to

the department and pay the applicable salvage title fee.

Ind.Code § 9–1–3.6–4 Repealed by P.L. 2–1991, § 109, effective July 1, 1991. Under the prior statute it is clear that after an insurance company determined that a vehicle was totaled and entered into a settlement with a claimant, the insurance company had the affirmative duty to obtain the original title from the owner and submit it to the Bureau of Motor Vehicles in order to receive a salvage title. After repeal, the statute no longer imposed an automatic obligation upon an insurance company to obtain a salvage title. Rather, the obligation is triggered only where the company has "acquired" the vehicle. Under the circumstances we interpret the term as denoting ownership and implying that the owner or lienholder has surrendered possession of the wrecked or damaged vehicle to the insurance company. Also, the fact of surrender may be shown by the owner or lienholder assigning to the insurance company the original certificate of title. To interpret the statute otherwise as Larkin suggests would impose upon Allstate the very obligation that existed under prior law.

 We find support for our interpretation by examining other provisions of the Salvage Motor Vehicle Act. For example subsection (b) of I.C. § 9–22–3–11 requires an insurance company or other person to apply for a certificate of salvage title within thirty-one days after receipt of a certificate of title. *Id.* Obviously there can be no receipt of the title unless it is surrendered by the owner or lienholder. And sub-section (c) of I.C. § 9–22–3–11 implies that the owner or lienholder has no obligation to surrender the certificate of title. "A person who was the owner of a motor vehicle, motorcycle, semitrailer, or recreational vehicle at the time that the vehicle became wrecked or damaged may not be considered to have acquired that vehicle within the meaning of this section." I.C. § 9–22–3–11(c). Only where an insurance company or other person has acquired a vehicle is the obligation to obtain a salvage title imposed. Thus an owner or lienholder may receive a settlement from an insurance company for a vehicle that has been totaled, retain possession of the vehicle, and still not be obligated to obtain a certificate of salvage title. We have the exact situation before us. In sum, prior to repeal an insurance company had the absolute duty to apply for a certificate of salvage title once it reached a settlement with the owner or lienholder of a wrecked or damaged vehicle. We must presume that when the Legislature repealed the prior law it was aware of an insurance company's obligation and decided to change that obligation.

Judgment reversed.

SHARPNACK, C.J., and STATON, J., concur.