Thomas G. ALLEN, Joe M. Gilstrap, Thomas G. Grier, James H. Nelson, Donald K. Owens, Richard K. Patierno, Richard K. Patierno, Jr., Silvine M. Patierno and John M. Stone, Appellants (Plaintiffs Below),

v.

GREAT AMERICAN RESERVE INSURANCE COMPANY and Glenn H. Guffey, Appellees (Defendants Below).

No. 29S05–0204–CV–222.

Supreme Court of Indiana.

April 2, 2002.

George M. Plews, Jeffrey A. Townsend, Indianapolis, Indiana, Attorneys for Appellants.

Patricia Polis McCrory, Mark W. Pfeiffer, Joseph H. Yeager, Jr., Shawna Meyer Eikenberry, Indianapolis, Indiana, Attorneys for Appellees.

**ON PETITION FOR TRANSFER**

BOEHM, Justice.

### Factual and Procedural Background

Plaintiffs [1] are insurance agents licensed in North or South Carolina. Each of them sold the Flex II, a tax-deferred annuity issued by Jefferson National Life ("JNL"), to individual residents of those states. The plaintiffs were recruited by defendant Glenn H. Guffey, then a resident of South Carolina, and entered into contracts with JNL calling for them to work under Guffey, who served as JNL's general agent. JNL subsequently merged into defendant Great American Reserve Insurance Company ("GARCO"), a Texas life insurance company with its principal office in Indiana, and GARCO succeeded to the policies. Each plaintiff's contract with GARCO contained a choice of law provision that the contract was to be "construed in accordance with the laws of the State of Indiana exclusive of choice of laws provisions." There was also a forum selection clause providing that venue "for any action between the parties arising under this Agreement" was to be in a court in Hamilton County, Indiana.

In exchange for annual premiums, the Flex II promised annuity income in the future. Guffey trained the plaintiffs, and part of that instruction included telling the plaintiffs that the Flex II had no front-end load, meaning that no commission or other fees would reduce the amount of premiums

---

1. Plaintiff Thomas G. Allen is a resident of North Carolina. Plaintiffs Joe M. Gilstrap, Thomas G. Grier, James H. Nelson, Donald K. Owens, Richard K. Patierno, Richard K. Patierno, Jr., Silvine M. Patierno, and John M. Stone are residents of South Carolina.

used to build up the value of the policy. In fact, the Flex II did have a front-end load, and for most policyholders only 65% of the first year's premium was applied to add to the value of the policy. Just over 85% was applied in years two through five, and only in year six did the entire premium go to enhance the value of the annuity. After some of the plaintiffs' customers complained about misrepresentations in the sale of the Flex II, the South Carolina Department of Insurance launched an investigation. As a result of the investigation, most of the plaintiffs entered into consent decrees with the department admitting that they had misrepresented the Flex II as to the existence of a front-end load.

The plaintiffs first sued Guffey and GARCO in federal court in South Carolina. That suit was dismissed without prejudice for improper venue and lack of diversity of citizenship. The plaintiffs then initiated this suit in the Hamilton Circuit Court, asserting twelve counts against both Guffey and GARCO. The substance of many of these claims was that the plaintiffs incurred liability to their customers and costs of regulatory proceedings and defense of civil lawsuits, all as a result of Guffey's and GARCO's misrepresentations that the Flex II had no front-end load. The trial court, applying South Carolina law to the entire proceeding, granted partial summary judgment in favor of Guffey and GARCO on most of the counts on the ground that the plaintiffs, as licensed insurance agents, could not have reasonably relied on the claimed misrepresentations.

The Indiana complaint also asserted three Indiana statutory causes of action, and a claim for negligence. The trial court granted summary judgment as to the statutory claims on the ground that these Indiana statutes were not applicable to claims governed by South Carolina law, and also on statute of limitations grounds. The negligence claim was also dismissed on statute of limitations grounds. Finally, two counts remain in the trial court while this interlocutory appeal proceeds.

The Court of Appeals concluded that the plaintiffs' Indiana statutory claims and the claim for negligence were properly preserved by the Journey's Account statute, and reversed that portion of the summary judgment order dismissing those counts, but agreed that the plaintiffs' status as experts in the field of insurance precluded recovery under the misrepresentation counts. The plaintiffs seek transfer to this Court.

### Standard of Review

 On appeal, the standard of review of a grant or denial of a motion for partial summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Bemenderfer v. Williams,* 745 N.E.2d 212, 215 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

### The Parties' Contentions

No one in this lawsuit claims that because the policies were represented to contain no front-end load, the purchasers were entitled to that benefit. Rather, all parties agree that the policies in fact carried a front-end load. The plaintiffs contend, in broad brush, that they were assured by Guffey that they were selling no-load policies, they sold the policies on that basis, and they incurred losses as a result of the false assurances. Because Guffey was GARCO's general agent, plaintiffs contend GARCO is liable as principal as well as for its own actions.

The defendants point out that the plaintiffs admit that they never read the Flex II policies they sold. The defendants contend that a reading of the policies discloses that the cash value of the policy is less than the premiums paid until year seven. They also note that the plaintiffs received commissions on the sale of the policies, and the money had to come from somewhere. From this they argue that no licensed insurance agent could reasonably conclude that the policies were no-load. The plaintiffs' contentions are found in twelve different counts. We note at the outset that because the parties hail from different states, and because many of the activities in question occurred in different states, this case raises significant choice of law issues. In analyzing each of the counts of the plaintiffs' complaint, it is first necessary to determine which state's law applies to that count. The answer may differ for different counts and may differ between defendants as to a single count. As a preliminary matter, except as to Count VI, no party argues for the application of the law of North Carolina to any claim. Accordingly, we discuss only the choice between South Carolina and Indiana law as to each of the other counts.

## Count I: Breach of Contract Accompanied by Fraudulent Act

In this count, the plaintiffs allege that their contract with GARCO and their sub-agency relationship with Guffey implied a duty and obligation of good faith and fair dealing. The plaintiffs claim that, with fraudulent intent and through fraudulent acts, GARCO and Guffey breached these implied covenants, and that those breaches are equivalent to breaches of contract.

■ Ordinarily a choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions. Here we are un-

clear whether this is the case as to these or potentially other issues raised by these claims after remand. Accordingly, we address choice of law as to this count. Because these cases are brought in Indiana, Indiana choice of law doctrines control. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987).

### A. *As to GARCO*

■ The plaintiffs describe their claim in Count I against GARCO as a claim for breach of a covenant of good faith implied in their contracts with GARCO. Indiana choice of law doctrine favors contractual stipulations as to governing law. *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind.Ct.App.1999); *Homer v. Guzulaitis*, 567 N.E.2d 153, 156 (Ind.Ct.App.1991), *trans. denied; Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313, 1315 (Ind.Ct.App.1988). There is no reason here to disregard that presumption. Accordingly, the contractual provision that Indiana law governs the construction of the contract is controlling on the choice of law issue. Indiana law recognizes an implied duty of good faith in all insurance contracts requiring that an insurer will act in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind.1993). This duty results from the unique nature of the insured/insurer relationship, which may be at varying times arm's-length, fiduciary, and/or adversarial. *Id.* But Indiana does not imply such a covenant in every contract. *See First Fed. Sav. Bank v. Key Mkts.*, 559 N.E.2d 600, 604 (Ind. 1990) (not court's province to require party acting pursuant to unambiguous contract to be "reasonable," "fair," or show "good faith" cooperation). We nevertheless think these agency agreements, though by professionals, are in the category of agreements that carry some implied covenants. Agency relationships generally carry with

them the obligation of the principal to exercise reasonable care to avoid placing the agent in harm's way in the course of carrying out the agency. *Montgomery Ward & Co., Inc. v. Tackett,* 163 Ind.App. 211, 217, 323 N.E.2d 242, 246 (1975).[2] This is essentially what the plaintiffs allege was not done here. Thus, if the plaintiffs can establish that Guffey or GARCO allowed or caused them to misrepresent the "no-load" feature, with knowledge that the plaintiffs believed their representation to be true, and plaintiffs' reliance on a defendant's actions or omissions was reasonable, then perhaps a breach of this duty would be established under Indiana law, which applies to GARCO by reason of the contract.

### B. *As to Guffey*

■ As to Guffey, who had no contract with any plaintiff, Count I alleges a breach of the duty of good faith and fair dealing arising from the agency relationship itself, apart from any claims of breach of contract. However, we do not believe such a claim against Guffey is governed by Indiana law on the facts of this case.

■ This Court has not addressed the choice of law governing a multistate agency, apart from contract. We think comment f to the Restatement (Second) of Conflict of Laws ("Restatement") section 291 accurately states the law applicable here: if "the agent is employed to do a number of acts on the principal's behalf in a single state, the local law of this state will usually determine the rights and duties owed by the principal and agent to each other." The activities conducted un-

der this agency relationship were substantially all in South Carolina, and we conclude the trial court correctly ruled that the law of South Carolina governs this claim against Guffey.

■ The trial court, also applying South Carolina law, determined that summary judgment was appropriate on this count because the plaintiffs' "reliance on Guffey's alleged misrepresentations was not reasonable as a matter of law," and thus no claim for fraud could lie. We agree that this claim requires reasonable reliance on the part of the plaintiffs. Although we find no directly relevant South Carolina authority, we believe that to the extent a claim asserts a breach of the duty of good faith and fair dealing has been accomplished by means of an allegedly fraudulent misrepresentation, the resulting claim is in substance a claim for fraud based on misrepresentation. In South Carolina, "[f]raud based on a misrepresentation and negligent misrepresentation both include a requirement that the plaintiff justifiably relied on the representation made by the defendant." *West v. Gladney,* 341 S.C. 127, 533 S.E.2d 334, 338 (Ct.App.2000).

### C. *Summary Judgment*

■ We do not agree that summary judgment is appropriate as to this count under either Indiana or South Carolina law. It is true that in South Carolina an insurance agent is deemed to be "an expert dealing in a highly specialized business, with knowledge and means of knowledge not possessed by the average applicant for insurance." *Riddle–Duck-*

---

**2.** This is not a claim that termination of the agency breached an implied covenant of good faith. Such a claim in Indiana would face case law to the effect that employment at will agreements carry no such implied covenant. *See, e.g., N. Ind. Pub. Serv. Co. v. Dabagia,* 721

N.E.2d 294, 300 (Ind.Ct.App.1999), *trans. denied.* If anything, an independent agent would seem less entitled to special treatment than an employee who, like a consumer, may have little practical ability to negotiate the terms of the agreement.

*worth, Inc. v. Sullivan*, 253 S.C. 411, 171 S.E.2d 486, 490 (1969). It is also true that "where an insurance agent or broker, with a view toward being compensated, undertakes to procure insurance for a member of the public, the law holds the agent or broker to the exercise of good faith, and reasonable skill, care and diligence" in so doing. *Id.* We think these authorities establish the plaintiffs' liability to their customers. It does not necessarily follow, however, that as between the plaintiffs and the general agent (Guffey) and their principal (GARCO), the plaintiffs' reliance on representations by Guffey was unreasonable as a matter of law. We are directed to no South Carolina case that stands for the proposition that the reliance of an insurance agent, particularly where intentional misrepresentations may be involved, is to be measured by any standard other than that applied to any other litigant. In South Carolina, as a general rule, "issues of reliance and its reasonableness ... are preeminently factual issues for the trier of facts." *Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 303 S.C. 384, 401 S.E.2d 153, 155 (1991).

Indiana similarly requires reasonable reliance as an element of any recovery for alleged misrepresentation or failure to notify. *See, e.g., Eby v. York–Div., Borg–Warner*, 455 N.E.2d 623, 628–29 (Ind.Ct. App.1983). As a general proposition under the law of both states, the reasonableness of the plaintiffs' reliance is usually a question for the trier of fact. *Unlimited Servs.*, 401 S.E.2d at 155; *Biberstine v. N.Y. Blower Co.*, 625 N.E.2d 1308, 1316 (Ind.Ct.App.1993). On the other hand, both states recognize that the reasonableness of reliance can in some circumstances be determined as a matter of law. *Biberstine*, 625 N.E.2d at 1316 ("When confronted with representations which are 'simply

not the stuff that fraud is made of,'" a court may find as a matter of law either that the representations are not actionable or that the plaintiff had no right to rely as a matter of law. (quoting *Plymale v. Upright*, 419 N.E.2d 756, 763 (Ind.Ct.App. 1981))); *Nine v. Henderson*, 313 S.C. 309, 437 S.E.2d 182, 184 (Ct.App.1993) (summary judgment appropriate against purchaser of home on claim that defendant misrepresented extent of termite problem at home because purchaser himself discovered additional termite damage prior to closing, was provided at closing with expert reports regarding the possibility of hidden termite damage, and chose not to postpone closing until additional tests could be performed). The issue on this appeal from a grant of summary judgment is whether the inflexible rule of law of either state is that a licensed agent may never rely on a general agent's or the insurer's affirmative misrepresentations if they are contradicted or called into question by an informed reading of the policy or other documentation. We think there are circumstances where that reliance may be reasonable and therefore conclude whether or not any such circumstances apply here is for the trier of fact. Therefore, summary judgment on this basis was not appropriate.

### Count II: Common Law Fraud

Allegations of common law fraud assert a tort. Indiana has traditionally followed lex loci delicti in its choice of law as to tort actions. This is said to apply the substantive law of the state where the tort was "committed." *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). In turn, a tort is deemed "to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* Here, if the plaintiffs have a valid claim, the reliance and consequent damage in-

curred by the plaintiffs is the "last event" necessary to establish the elements of misrepresentation of a material fact reasonably relied upon. We think that South Carolina has a sufficient relationship to this action to satisfy traditional lex loci delicti under *Hubbard.* Even if this were not the case, as in *Hubbard,* and some of the factors enunciated in the Restatement (Second) of Conflict of Laws are considered, or other reasonable choice of law doctrines are applied, the result is the same.[3] Accordingly, we conclude that South Carolina law applies to this count as well. As explained with respect to Count I, in South Carolina, "[f]raud based on a misrepresentation and negligent misrepresentation both include a requirement that the plaintiff justifiably relied on the representation made by the defendant." *West v. Gladney,* 341 S.C. 127, 533 S.E.2d 334, 338 (Ct.App.2000). However, as we noted above, the trial court erred when it found the reliance of the plaintiffs to be unreasonable as a matter of law. Therefore,

summary judgment on this count was not appropriate.

### Counts III, IV, and V: Indiana Statutory Claims

 Counts III–V of the plaintiffs' complaint are based on Indiana statutory causes of action. Specifically, the plaintiffs seek treble damages pursuant to the Crime Victims Relief Act, Ind.Code § 34–24–3–1 (1998), and damages for violations of sections 35–43–5–3(a)(9) (statutory fraud), 35–43–5–3(a)(2) (statutory deception), and 35–43–1–2(a)(2) (criminal mischief). The trial court granted summary judgment for GARCO on these counts because (1) the plaintiffs' claims were governed by South Carolina law, and therefore the Indiana statutes were not applicable, and (2) these claims, as well as the plaintiffs' claim for negligence, were not preserved by Indiana's Journey's Account statute and were therefore barred by the statute of limitations. As to the second contention, we agree with the Court of Appeals that the claims

---

**3.** For an interesting display of varying points of view as to where choice of law stands today and where it should go, see *Symposium: Preparing for the Next Century—A New Restatement of Conflicts?* 75 Ind. L.J. 399 (2000). Under a "state interests" analysis, South Carolina clearly has the strongest interest in maintaining the integrity of its insurance markets. To the extent choice of law should be informed by the result the choice produces, we perceive no clear effect on the result in this case, though one may unfold as the facts develop. South Carolina also emerges victorious under Section 148 of the Restatement (Second) of Conflict of Laws, which specifically addresses claims of fraud and misrepresentation. According to it, where, as in the present case, the alleged misrepresentations and the reliance upon them occur in different states, the following factors must be considered to determine which state has the most significant relationship to the occurrence and the parties: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations; (b) the place where

the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) of Conflict of Laws § 148 (1971). With regard to GARCO, contacts (a), (b), and (f) clearly point to South Carolina, and only contact (c) points unequivocally to Indiana. Contact (d) is evenly divided between the two, and contact (e) is largely irrelevant to this action. As comment j to section 148 points out, when contacts (a), (b), and (f) are all in the same state, that state will "usually be the state of the applicable law." *Id.* at cmt. j. With regard to Guffey, all the section 148 factors support the application of South Carolina law.

were preserved by the Journey's Account statute and summarily affirm the Court of Appeals on that issue. *Allen v. Great Am. Reserve Ins. Co.*, 739 N.E.2d 1080, 1085 (Ind.Ct.App.2000). As to the first contention, the question is not which state's law applies to these claims. There is no doubt that Indiana law applies to a claim under an Indiana statute. Rather, the issue is whether the statutes apply to the facts alleged to support these claims, given that the allegations are based in significant part on acts that occurred outside of Indiana.

■ In Count III of their complaint, the plaintiffs allege that GARCO and Guffey provided them with "various literature, brochures, handouts, work sheets and prepared sales presentations, indicating that the Flex II annuities bore no Front End Load," and that the provision of these materials constituted the dissemination to the public of a misleading advertisement in violation of section 35–43–5–3(a)(9). This subsection prohibits the dissemination to the public of "an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property or the acceptance of employment." I.C. § 35–43–5–3(a)(9). In Count IV, the plaintiffs allege that the provision of the same materials by GARCO and Guffey amounted to the making of false or misleading written statements with the intent to obtain property in violation of section 35–43–5–3(a)(2). Finally, in Count V the plaintiffs allege that the actions of GARCO and Guffey knowingly or intentionally caused the plaintiffs to suffer pecuniary loss by deception in violation of section 35–43–1–2(a)(2).

■ Accepting these allegations as we must for summary judgment purposes, it is clear that if these Indiana statutes were violated by GARCO, the acts taken by GARCO to violate the statutes—the dissemination of the allegedly fraudulent materials, the making of allegedly false or misleading written statements, and deception that knowingly or intentionally caused pecuniary loss—all occurred in Indiana. We do not think the resulting "pecuniary loss" needs to occur in Indiana for the statutes to apply. Section 35–41–1–1(b) of the Indiana Code sets forth the circumstances under which a person may be convicted under Indiana law. The most common of these circumstances is when "either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana." I.C. § 35–41–1–1(b)(1). Because the claims assert that GARCO's conduct took place in this state, these Indiana statutes are applicable to the plaintiffs' claims against GARCO. It was error to grant summary judgment for GARCO on the ground the statutes were inapplicable.

■ Unlike GARCO, which operates in Indiana, if Guffey violated the same statutes—by the dissemination of the allegedly fraudulent materials, the making of allegedly false or misleading written statements, and/or by deception that knowingly or intentionally caused pecuniary loss—it was only by acts in South Carolina or a few other southern states, but not Indiana. With regard to Guffey, both the conduct and the result of any wrongdoing occurred outside of Indiana. Thus, the Indiana statutes in question do not apply and do not support plaintiffs' claims against Guffey. We note that the same would be true under an accomplice theory of liability, for even if Guffey aided and abetted GARCO in criminal activity in Indiana, Guffey himself would be liable under the criminal law of Indiana only if his conduct occurred in Indiana. As Indiana Code section 35–41–1–1(b)(4) points out, accomplice liability is available only where "conduct occurring in Indiana establishes complicity in the com-

mission of ... an offense in another jurisdiction that also is an offense under Indiana law." The plaintiffs have not alleged that Guffey and GARCO conspired to violate the statutes, and that issue is not preserved. Guffey was properly granted summary judgment as to Counts III, IV, and V.

## Count VI: North Carolina Unfair Trade Practices

■ In this count, the plaintiffs seek damages against both GARCO and Guffey under North Carolina's general unfair trade practices provisions as well as under the unfair trade practices provisions of North Carolina's insurance laws. Unlike the other plaintiffs, Allen is a resident of North Carolina and sold Flex II annuities in that state. The Supreme Court of North Carolina has held that there is no private cause of action for unfair trade practices under the insurance laws of North Carolina. *Pearce v. Am. Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E.2d 174, 179 (1986). Rather, a private remedy is available, if at all, only through an action under the state's general unfair trade practices provisions. *Id.* Non-consumer insurance relationships are subject to pervasive and intricate regulation in North Carolina, and are therefore beyond the scope of the state's general unfair trade practices provisions. It appears unlikely that the plaintiffs could have maintained an action under North Carolina's general unfair trade practices law. The primary purpose of North Carolina's general unfair trade practices provisions is to protect consumers, although in limited situations businesses are protected as well. *Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704, 710 (2001). The plaintiffs certainly are not consumers per se. They were engaged in selling, not purchasing, these insurance products. The situations in which the courts of North Carolina have held that business activities are beyond the scope of these statutory provisions have often been those wherein the party allegedly violating the provisions was already subject to "pervasive and intricate regulation" under other statutory schemes. *Skinner v. E.F. Hutton & Co., Inc.*, 314 N.C. 267, 333 S.E.2d 236, 241 (1985) (securities transactions beyond scope of the provisions); *see also Bache Halsey Stuart, Inc. v. Hunsucker*, 38 N.C.App. 414, 248 S.E.2d 567, 570 (1978) (commodities transactions beyond scope of the provisions). Accordingly, summary judgment for GARCO and Guffey on this count was correctly granted.

## Count VII: South Carolina Unfair Trade Practices

■ The plaintiffs seek damages against both GARCO and Guffey under South Carolina's general unfair trade practices provisions as well as under South Carolina's Insurance Trade Practices Act. In South Carolina, "all unfair trade practices regarding the insurance business are regulated by the Insurance Trade Practices Act," and are therefore exempt from the coverage of the state's general unfair trade practices provisions. *Trs. of Grace Reformed Episcopal Church v. Charleston Ins. Co.*, 868 F.Supp. 128, 130–31 (D.S.C. 1994). Relying upon the general purposes of the insurance laws of South Carolina, as well as upon the Insurance Commissioner of South Carolina's statutory authority to enforce its provisions, the trial court determined that the Insurance Trade Practices Act does not support a private cause of action. Although this Court is aware of no case that deals explicitly with that issue, a recent decision of the Court of Appeals of South Carolina at least implicitly supports a private cause of action for violations of the Insurance Trade Practices Act. In *Cox v. Woodmen of the World Ins. Co.*, 347 S.C. 460, 556 S.E.2d 397 (Ct.App.2001), the

court, without comment, allowed a private cause of action against out-of-state defendants under the act. Nor does the statute granting enforcement authority to the Commissioner explicitly preclude a private cause of action. S.C.Code Ann. § 38–3–110 (Law Co-op.2000). And the Supreme Court of South Carolina has recognized a private cause of action for wrongful termination of an agency agreement under section 38–37–940(2) of the state's insurance laws. *Dixon v. Nationwide Mut. Ins. Co.*, 281 S.C. 452, 316 S.E.2d 376, 377 (1984). For these reasons, we conclude that the Insurance Trade Practices Act does support a private cause of action. The presence or absence of reasonable reliance by the plaintiffs presents genuine issues of material fact as to whether the actions of GARCO and/or Guffey constituted unfair and deceptive acts and practices. Accordingly, summary judgment on this count was not appropriate.

### Count VIII: Civil Conspiracy

 Allegations of conspiracy sound in tort. For the reasons applicable to the plaintiffs' fraud claim, South Carolina law governs this claim as well. Unlike criminal conspiracy, "[t]he gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement." 16 Am.Jur.2d, Conspiracy, § 53 at 279 (1998). For that reason, we believe the place where the injury occurred is both the "last event" and also a significant contact. To prevail on a claim of civil conspiracy in South Carolina, one must prove that "a combination of two or more parties joined for the purpose of injuring the plaintiff thereby causing him special damage." *Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45, 50 (1996). As the trial court correctly noted, the plaintiffs have failed to allege that Guffey and GARCO joined for the purpose of injuring the plaintiffs. Accordingly,

judgment for Guffey and GARCO on this count was appropriate.

### Count IX: Tortious Interference with a Business Relationship

 In this count, the plaintiffs allege that Guffey interfered with the business relationship the plaintiffs had with GARCO and with annuity holders who were customers of the plaintiffs by moving some of the accounts the plaintiffs had placed with GARCO to a different life insurance company. The plaintiffs claim that they were damaged by this transfer. Plaintiffs have not alleged, however, that GARCO was in any way responsible for the transfer. But even if the movement of the accounts is conceived to be outside South Carolina (where the owners of the accounts presumably reside), its effect on the plaintiffs was felt in that state. It is less clear what lex loci delicti would require for such a tort, but the business relationship between the plaintiffs and their customers was centered in South Carolina, and its disruption, to the extent it has a "locus," took place there. Even under the Restatement, as elaborated above, South Carolina law applies to this claim against Guffey. In South Carolina, to establish an action for intentional interference with a contract—the rough equivalent of tortious interference with a business relationship—the plaintiff must prove: (1) the existence of the contract; (2) the wrongdoer's knowledge of the contract; (3) the intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 287 S.C. 190, 336 S.E.2d 472, 473 (1985). Because genuine issues of material fact exist as to whether Guffey's moving the accounts constituted an unjustified intentional procurement of a breach of the contract between the plaintiffs and GARCO that resulted in

damages to the plaintiffs, summary judgment for Guffey on this count was not appropriate. Summary judgment for GARCO on this count, however, was appropriate because the plaintiffs have not alleged that GARCO was in any way responsible for the transfer.

### Count X: Negligence

■ This count alleges that Guffey was directly negligent in preparing and presenting materials to the plaintiffs that failed to disclose the existence of the Flex II's front-end load. Because Guffey was allegedly acting within the scope of his agency relationship, the count also seeks damages against GARCO on a theory of vicarious liability. Because this is a tort claim, South Carolina law applies to the claim against Guffey for the reasons explained under Count II. As to GARCO, section 174 of the Restatement provides that when questions of vicarious liability arise, "[t]he law selected by application of the rule of § 145 determines whether one person is liable for the tort of another person." Restatement (Second) of Conflict of Laws § 174 (1971). Thus, South Carolina law applies to the claim against GARCO as well.

■ Before the plaintiffs can establish vicarious liability, however, they must prove that Guffey was negligent. To do so under South Carolina law, the plaintiffs must show: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages resulting from the breach. *Arthurs v. Aiken County*, 346 S.C. 97, 551 S.E.2d 579, 582 (2001). In South Carolina, a claim for negligence will be barred on principles of comparative fault only if the plaintiff's negligence is greater than that of the defendant. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783, 784 (1991). If there is more than one defendant, the plaintiff's

negligence is compared to the combined negligence of all the defendants. *Id.* As explained above, the plaintiffs acknowledge that they never read the Flex II policies. As such they appear to bear some responsibility for their failure to discern the existence of the front-end load. However, the relative fault of the parties is a matter for the trier of fact. Because genuine issues of material fact exist as to the extent to which Guffey, GARCO, and/or the plaintiffs acted negligently, summary judgment for GARCO and Guffey on this count was not appropriate.

### Count XI: Indemnification

■ The plaintiffs claim that under common law principles they are entitled to indemnification by GARCO and Guffey for all the costs they have incurred as a result of GARCO's and Guffey's allegedly fraudulent acts. The trial court granted summary judgment for GARCO, but not Guffey, on this count. Thus, the plaintiffs' claim against Guffey remains in the trial court. As to GARCO, this count is based on the agency relationship between GARCO and the plaintiffs. Although a provision of the contract between the parties provides for the indemnification of GARCO by the plaintiffs, there is no provision for indemnification of the plaintiffs by GARCO. Accordingly, to the extent there is a claim for indemnity, it arises as a matter of law from the relationship of the parties and not from the contract. For essentially the same reasons applied in Count I to Guffey, South Carolina law applies to this claim against GARCO.

■ South Carolina has "long recognized" the principle of equitable indemnification. *Town of Winnsboro v. Wiedeman–Singleton, Inc.*, 307 S.C. 128, 414 S.E.2d 118, 120 (1992). Moreover, it has been many years since the Supreme Court of South Carolina first announced

that "[t]he principal impliedly agrees to indemnify his agent against liability for loss incurred in consequence of acts done in pursuance of the agency," *Gwathmey v. Burgiss,* 98 S.C. 152, 82 S.E. 394, 396–97 (1914), a sentiment shared by sections 439 and 458 of the Restatement (Second) of Agency. Nonetheless, South Carolina actions for equitable indemnification, like those in most jurisdictions, are subject to the proviso that no personal negligence of the plaintiff may have contributed to the injury for which that plaintiff seeks indemnification. *Atl. Coast Line R.R. Co. v. Whetstone,* 243 S.C. 61, 132 S.E.2d 172, 176 (1963). Whether the plaintiffs bear some responsibility for their failure to discern the existence of the front-end load is for the trier of fact. Accordingly, summary judgment for GARCO on this count was not appropriate.

### Count XII: Accounting

The trial court denied summary judgment to GARCO on this count, so the plaintiffs' claim against GARCO remains in the trial court. As to Guffey, the trial court granted summary judgment in his favor, finding that he was not a proper party against whom to seek an accounting. In their brief before the Court of Appeals, the plaintiffs concede as much, and we agree. As to Guffey, the judgment of the trial court is affirmed.

### Conclusion

We affirm in part, reverse in part, and remand this action to the trial court for proceedings consistent with this opinion. In sum, we conclude that summary judgment for defendant GARCO was appropriate on counts VI, VIII, and IX of the plaintiffs' complaint, and for defendant Guffey on counts III–VI, VIII, and XII. As to defendant GARCO, counts I–V, VII, X, XI, and XII remain viable at the trial court level. As to Guffey, counts I, II,

VII, and IX–XI remain viable. This case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.