# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-1675

LARRY D. STORIE,

*Plaintiff-Appellant,*

*v.*

RANDY'S AUTO SALES, LLC,

*Defendant/Third-Party Plaintiff/Appellee,*

*v.*

ST. PAUL MERCURY INSURANCE COMPANY,

*Third-Party Defendant/Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-22-WTL-DML—**William T. Lawrence**, *Judge.*

ARGUED SEPTEMBER 16, 2009—DECIDED DECEMBER 17, 2009

Before CUDAHY, WOOD, and SYKES, *Circuit Judges.*

CUDAHY, *Circuit Judge.* In 2004, Larry D. Storie bought a truck that had been involved in a fatal accident the previ-

ous year. Claiming that he had been misled about the truck's history, he brought suit against a number of companies that had owned the truck between the time of the accident and his purchase of it. The present case concerns Storie's lawsuit against Randy's Auto Sales, LLC. He alleges that Randy's failed to apply for a salvage title, as it was required to do under Indiana law. The district court granted summary judgment in favor of Randy's, finding that Ind. Code § 9-22-3-11(e) does not require an entity that acquired a wrecked vehicle to apply for a salvage title when it no longer owns the vehicle upon the receipt of the certificate of title. Because this case turns on the interpretation of an ambiguous state statute, we certify the case to the Supreme Court of Indiana.

## I. BACKGROUND

On November 17, 2003, the driver of a Western Star truck was killed in Indiana when the freight he was carrying shifted forward and pierced the cab. The truck was declared a total loss and purchased by its insurer, St. Paul Mercury Insurance Company. St. Paul applied for a Tennessee certificate of title as proof of its ownership, but did not apply for a salvage title.

Before Tennessee issued the title to St. Paul, the truck changed hands several times in quick succession. On January 13, 2004, St. Paul sold the truck to Randy's, an Indiana-based car dealer, which in turn sold the vehicle nine days later to West Side Auto Parts, Inc. West Side brought the truck to its headquarters in Owensboro, Kentucky. The next month, on February 26, 2004, West

Side sold the vehicle to Duckett Truck Center, Inc. in Farmington, Missouri.

After these transactions, but before the truck was finally sold to plaintiff Storie, Tennessee issued a certificate of title to St. Paul on March 19, 2004. On or about April 13, 2004, St. Paul sent the title to Randy's, which duly forwarded the title to West Side, which in turn passed it over to Duckett. None of these entities applied for a salvage title.

On June 11, 2004, Duckett sold the truck to Storie, an Illinois resident, who applied for an Illinois title on the truck. After driving the truck for more than eighteen months and two-hundred thousand miles, Storie claims that he learned of the vehicle's involvement in a fatal accident for the first time. On August 16, 2006, Storie brought suit against St. Paul, Randy's, West Side and Duckett in the United States District Court for the Eastern District of Missouri. Storie voluntarily dismissed his claims against Randy's and West Side for lack of personal jurisdiction. He then refiled his claims against Randy's and West Side in the United States District Court for the Southern District of Indiana.

The present case concerns Storie's action against Randy's only. He contends that Randy's violated Ind. Code § 9-22-3-11(e), which provides:

> Any other person acquiring a wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle that meets at least one (1) of the criteria set forth in section 3 of this chapter, which acquisition is not evidenced by a certificate of salvage title, shall apply to the bureau within

> thirty-one (31) days after receipt of the certificate
> of title for a certificate of salvage title.[1]

Storie argues that Randy's "acquired" the truck on January 13, 2004, when it purchased the vehicle from St. Paul. He submits further that Randy's lack of continuing ownership at the time it received the certificate of title is of no moment. Storie thus contends that the provisions of Ind. Code § 9-22-3-11(e) were triggered and that Randy's failure to apply for a salvage title violated the statute.

The district court was not convinced. It held that Randy's had no obligation under Indiana law to obtain a salvage title, opining that "[b]y the time it received the title from St. Paul, it no longer owned the Truck, and therefore could not have obtained any Indiana title for it." *Storie v. Randy's Auto Sales, LLC*, 2009 WL 348751, at *2 (S.D. Ind. Feb. 6, 2009). It thus granted summary judgment in favor of Randy's. *Id.* In doing so, however, the court noted that its "holding is not necessarily consistent with the presumed purpose of the salvage title requirement, which is to protect consumers against the risks associated with purchasing previously wrecked vehicles without knowledge of their history." *Id.* at n.4. Nevertheless, the court felt unable to "impose a statutory duty where none exists." *Id.*

In its opinion, the district court omitted reference to four arguments advanced by Randy's in its motion for

---

[1] Storie's complaint alleges a violation of Ind. Code § 9-22-3-11(d) (2004). The statute was amended in 2006, with the result that the old subsection (d) became the new subsection (e). The amendment had no substantive effect.

summary judgment, namely that Indiana's salvage title applies only to vehicles that will be owned and operated within Indiana, that Indiana law would follow the law of the titling state, that insurance companies are gate-keepers upon whom dealers can legally rely and that Ind. Code § 9-22-3-11(e) does not apply to dealers.

Storie now appeals from the entry of summary judgment against him.

## II.  DISCUSSION

Summary judgment is proper only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008). To the extent we are called upon to review the district court's interpretation of a statute, the standard of review is likewise de novo. *See Boyd v. Illinois State Police*, 384 F.3d 888, 896 (7th Cir. 2004).

### A.  The Application of Ind. Code § 9-22-3-11(e) to Randy's

Does Ind. Code § 9-22-3-11(e)'s reference to "any other person" capture a former owner that sells a salvage vehicle before it receives the certificate of title? According to Storie, it is immaterial whether an entity that acquired a wrecked vehicle actually owns it upon receipt of the title. Its obligation to apply for a certificate of salvage title remains unaffected. The district court, in contrast, found

that a lack of continuing ownership absolves an acquiring person of any obligation to apply for a salvage title when it receives the certificate of title.

Ind. Code § 9-22-3-11(e) is not a model of clarity. Literally, its command that "[a]ny other person acquiring a wrecked or damaged motor vehicle . . . shall apply to the bureau . . . after receipt of the certificate of title for a certificate of salvage title" might capture current and former owners alike, as long as they once "acquired" the vehicle. Section 11 makes no explicit reference to an ongoing requirement of ownership. Yet, a variety of arguments suggests that former owners might nevertheless be exempt.

Competing interpretations of the statute lead us to conclude that it is ambiguous and that it should be certified to the Indiana Supreme Court pursuant to our Circuit Rule 52. We consider the reasoning that supports the district court's conclusion before considering that which opposes it.

There are a number of reasonable arguments that the obligations imposed by Ind. Code § 9-22-3-11(e) are limited to current owners.

First, Ind. Code § 9-22-3-4 states that the bureau will issue a certificate of salvage title as "proof of ownership." This might suggest that an entity cannot or should not apply for such a certificate if it no longer owns the salvage vehicle when it receives the certificate of title. Indeed, Section 4 only allows "the acquiring insurance company, disposal facility, or person" to apply for a certificate of salvage title. If the vehicle has been subsequently sold

to a new party, it is not entirely clear how the former owner can then be characterized as "the acquiring" party.

Second, being a present participle, "acquiring" implies that the legislature envisioned some form of simultaneity between the act of acquiring a salvage vehicle and receiving the certificate of title.[2] This might suggest that Indiana never intended for companies that acquire salvage vehicles to be bound by § 9-22-3-11(e) if they receive the certificates of title after they have sold the vehicles.

Third, and perhaps most importantly, the Indiana Court of Appeals has held that acquisition denotes ownership. *See Larkin's Body Shop*, 673 N.E.2d at 849. If these terms are in fact synonymous, then Ind. Code § 9-22-3-11(e) requires "any other person" *owning* a wrecked or damaged motor vehicle to apply for a salvage title within thirty-one days of receiving the certificate of title. If a person does not own the vehicle when she receives the title, then she would not be obliged to apply for a salvage title.

Before proceeding, a few words of caution are in order. One might be tempted to look to the section's purported

---

[2] Although "acquiring" is a somewhat ambiguous term, it does seem to require some change in ownership or that the wrecked vehicle change hands in some respect. The Indiana Court of Appeals has clarified that an owner whose car is totaled, but who receives a settlement from an insurer and decides to maintain possession of the wrecked vehicle, does not "acquire" it. *Allstate Ins. Co. v. Larkin's Body Shop & Auto Care*, 673 N.E.2d 846 (Ind. Ct. App. 1996). Such an owner therefore is not required to apply for a salvage title. *Id.*

title for guidance. After all, the U.S. Supreme Court has observed that the title of a section can clarify ambiguities in the legislation's text. *See INS v. National Center for Immigrants' Rights*, 502 U.S. 183, 189-09 (1991).[3] The "official" title on the http://www.in.gov website is "Application by insurer or owner for certificate of salvage title."[4] This title makes no reference to former owners and might thus suggest that its reach be limited to current owners. But it appears that there is in fact no official title. The enacting

---

[3] Nevertheless, such a heading is only "a short-hand reference to the general subject matter involved" and is "not meant to take the place of the detailed provisions of the text." *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947). Moreover, a heading cannot limit the plain meaning of the text. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Although the "official" title (as indicated in the forthcoming text) suggests that Section 11 does not apply to entities that no longer own wrecked vehicles when they receive the certificates of title, it does not demand that conclusion. Arguably, Subsection (e)'s reference to "any other person" is sufficiently broad to capture former owners. In any event, we decline to place weight on this title.

[4] At first blush, there would appear to be a tension between West's annotated title of Ind. Code § 9-22-3-11, which provides: "Salvage titles; applications by insurers, self-insurers or other parties; owner surrenders certificate of title; Class D infraction," and the "official" title on the http://www.in.gov website, which simply states: "Application by insurer or owner for certificate of salvage title." It would seem that the official title is to be preferred. *See Neidow v. Cash in a Flash, Inc.*, 841 N.E.2d 649, 654 (Ind. Ct. App. 2006).

legislation does not contain headings for the sections. *See* Ind. Pub. L. No. 2-1991, *amended by* Ind. Pub. L. No. 268-2003 & Ind. Pub. L. No. 110-2006. The section titles would seem to have been added later for purposes of clarity. This being the case, we decline to place weight on the heading to Ind. Code § 9-22-3-11, which is available at the http://www.in.gov website.

Despite the preceding bases for inferring that the reach of Ind. Code § 9-22-3-11(e) is limited to current owners, there are some respectable arguments that suggest the opposite conclusion.

First, the preceding arguments have important limitations. In *Larkin's Body Shop*, for instance, the Indiana Court of Appeals did not hold that acquisition is synonymous with ownership for all purposes. *Larkin's Body Shop*, 673 N.E.2d at 849. Indeed, the court noted that its holding was specific to the circumstances of the case. *Id.*

In addition, although certificates of salvage title operate as "proof of ownership," so too do certificates of title. Yet, it is clear that an entity can assign its ownership interest in a vehicle without immediately providing a certificate of title. *See* Ind. Code § 9-17-3-3; *Madrid v. Bloomington Auto Co., Inc.*, 782 N.E.2d 386, 395 (Ind. Ct. App. 2003) (holding that, under Indiana law, ownership can be transferred consistent with the UCC irrespective of whether the certificate of title has been delivered). Thus, dealers can and, accordingly to Randy's, regularly do sell vehicles

before they receive the associated certificates of title.[5] This means that certificates of title, which ostensibly act as proof of ownership, are routinely issued to former owners.

Second, § 9-22-3-11(a) limits the section's application to "persons," who are defined as certain insurance companies. However, the remainder of Section 11 also refers to, and imposes obligations upon, "owners," "lien-holders" and "self-insured entities." These appear to be distinct from the "persons" (i.e., insurance companies) defined in subsection (a). Thus, when subsection (e) makes reference to "any other person," it would seem to refer to more than the "persons" (insurance companies), owners, lien-holders and self-insured entities referenced above. Such all-encompassing language could reasonably be considered to capture former owners who subsequently receive certificates of title.

Third, a literal reading of subsection (e) might encompass Appellee's acquisition in this case. The company could surely be characterized as "acquiring" the truck when purchasing it. Randy's also received the certificate of title. Pursuant to the literal command of the subsection, it was arguably required to apply for a salvage title. This conclu-

---

[5] Randy's asserts in its brief that it is customary for dealers to sell vehicles before receiving the certificate of title because they "may be waiting weeks or months" before the title arrives. We direct Randy's to Ind. Code § 9-17-3-3(b), which allows a licensed dealer who does not yet possess a certificate of title to sell a vehicle to another licensed dealer only if the seller can deliver that title within twenty-one days of the sale.

sion is bolstered by the purpose underlying the statute, which is presumably to protect consumers from innocently purchasing wrecked vehicles. *See generally Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 2d 640, 659 (N.D. Ohio 2005) (characterizing another state's salvage title law in this way); *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 70 (Mo. 1989) (same). If car dealers or other sellers can evade the command of the statute by simply selling a salvage vehicle before the certificate of title arrives, the entire purpose of the legislation can be readily defeated. The Indiana Supreme Court has held that ambiguous statutes should be construed "so as to arrive at the apparent intention of the legislature." *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 210 (Ind. 1981). Notably, the district court indicated that its interpretation was in some tension with the underlying purpose of the statute. *Storie*, 2009 WL 348751, at *2 n.4.

Given these difficulties, we find Ind. Code § 9-22-3-11(e) to be ambiguous. We conclude that the question raised by the present case may best be answered by the Indiana Supreme Court. *See Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind. 1993) (holding that Indiana courts will only engage in statutory interpretation if the language of the statute is ambiguous); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997); *Transamerica Ins. Co. v. Henry*, 904 F.2d 387, 390 (7th Cir. 1990). Before we certify this question, however, we must first ascertain whether the issue is outcome-determinative. *See Shirley v. Russell*, 69 F.3d 839, 844 (7th Cir. 1995).

### B. The Interpretation of Ind. Code § 9-22-3-11(e) Is Outcome-Determinative

Although we conclude that Ind. Code § 9-22-3-11(e) is ambiguous and best interpreted by the Supreme Court of Indiana, we can only certify the question if the present case turns on the meaning of this statute. *See Shirley*, 69 F.3d at 844; *Henry*, 904 F.2d at 390.

In its response brief, Randy's presented a number of additional arguments in favor of its position. Although the district court did not consider these arguments in its summary judgment ruling, we may consider them because our review is de novo. *See Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001).

The first, and foundational, question is whether Ind. Code § 9-22-3-11(e) in fact applies to Randy's in the present case. There seems little question that it does. Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules determine the applicable substantive law. *See Sound of Music Co. v. 3M*, 477 F.3d 910, 915 (7th Cir. 2007). Here, the choice of law analysis is straightforward. Storie brought the present action in the Southern District of Indiana, alleging a violation of an Indiana statute. It is well-established "that Indiana law applies to a claim under an Indiana statute." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1166 (Ind. 2002). The only question is whether the Indiana statute applies to the facts alleged in the complaint. *Id.* Ind. Code § 9-22-3-11(e) clearly applies to the facts of the present case. Randy's—an Indiana resident—purchased and sold the salvage vehicle in Indiana, thus conducting activities in

Indiana that are directly regulated under the Indiana statute.

Storie submits that the Indiana savage title law only applies to vehicles that are to be owned and operated within Indiana, citing a decision of the United States District Court for the Southern District of Indiana. *See Riha v. State Farm Mutual Automobile Ins. Co.*, 2007 WL 42976 (S.D. Ind. Jan. 3, 2007).

*Riha* placed determinative weight on Ind. Code § 9-17-2-1(a). This provision, which appears in a separate Chapter from the one that governs salvage vehicles, requires every person who both becomes an Indiana resident and owns a vehicle that will be operated in Indiana to obtain a certificate of title within sixty days. It is not at all clear how this provision can be read to relieve "any other person acquiring" a wrecked vehicle in Indiana of the responsibility to apply for a salvage title when that vehicle will not be used in-state. Ind. Code § 9-17-2-1(a) simply requires new Indiana residents to obtain Indiana certificates of title for their vehicles. It says nothing about the situation of an entity that acquires a wrecked vehicle for the purpose of Ind. Code § 9-22-3-11(e).

Storie next urges this court to rely on and follow a decision of the United States District Court for the Eastern District of Missouri, which held that Indiana law would require the application of the law of the titling state. *See Storie v. Duckett Truck Center, Inc.*, 2007 WL 4379174 (E.D. Mo. Dec. 13, 2007). *Duckett*—a case brought by Appellant against the company that sold him the truck—focused on Ind. Code § 26-1-9.1-316. The *Duckett* court concluded from this provision that Indiana would look to Tennessee's

salvage title statutes, given that the latter jurisdiction issued the vehicle's certificate of title.

Ind. Code § 26-1-9.1-316 provides that the local law of the jurisdiction "under whose certificate of title the goods are covered governs perfection, the effect of perfection or non-perfection, and the priority of a security interest in goods covered by a certificate of title." *Id.* The *Duckett* court thus inferred that, under Indiana law, the titling state's law similarly governs the obligation to apply for a salvage title.

We are not convinced that the Missouri federal court's inference in *Duckett* was correct. Although the statute specifies that the titling state's law governs perfection and priority of a security interest in a vehicle, nowhere does the statute indicate that the titling state's law covers anything more than that. Neither the Uniform Commercial Code nor the Indiana Code provides that an entity that acquires a salvage vehicle in Indiana is subject to the salvage title laws of the titling state. Indeed, and quite to the contrary, Ind. Code § 9-22-3-11(e) explicitly demands that "[a]ny other person acquiring a wrecked or damaged motor vehicle . . . shall apply to the bureau . . . after receipt of the certificate of title for a certificate of salvage title." In the absence of a provision that suggests otherwise, it would seem odd to read the statute in a way that would absolve an Indiana dealer of its obligations to abide by Indiana salvage title laws when it happens to purchase a vehicle that is titled by another state.[6]

---

[6] The Eastern District of Missouri observed that "[m]otor vehicles . . . may be bought in one state, sold in another, regis-

(continued...)

Randy's finally argues that insurance companies are gatekeepers upon whom dealers can legally rely and that Ind. Code § 9-22-3-11(e) does not apply to dealers. Neither of these contentions has merit.

First, no statutory provision that we can find suggests that Ind. Code § 9-22-3-11(e) applies only to dealers. Indeed, the literal language of that provision, which speaks to "any other person," suggests quite the opposite. Second, Indiana can legitimately require those operating within its jurisdiction to comply with its salvage title laws. Depending on the relevant state's law, an out-of-state insurance company may be able to acquire a wrecked vehicle without having to apply for a salvage title. But "any other person acquiring" that vehicle in Indiana is required by Ind. Code § 9-22-3-11(e) to apply for a salvage title once it receives the certificate of title (subject only, of course, to the question whether ongoing ownership is required).

Since we decline to follow *Riha* and *Duckett*, and because we conclude that Randy's was properly subject to the provisions of the Indiana salvage title, the interpretation of

---

6 (...continued)
tered in a third, and damaged in a fourth, creating a myriad of choice of law issues." *Duckett*, 2007 WL 4379174, at *6. In concluding that the law of the titling state applies, the court was presumably trying to inject some certainty into an otherwise nebulous body of conflicting state law. However, the proffered solution would be effective only if all states applied the salvage laws of the titling state. In any event, we find § 26-1-9.1-316 to have only a tenuous relationship with § 9-22-3-11(e).

Ind. Code § 9-22-3-11(e) is determinative of the present case. Since there is no clear controlling Indiana precedent, it is appropriate to certify this issue to the Supreme Court of Indiana under both Indiana Rule of Appellate Procedure 64 and our Circuit Rule 52.

### III.  CONCLUSION

We certify to the Indiana Supreme Court the question whether an entity that purchases and later sells a wrecked vehicle is required to apply for a salvage title under Ind. Code § 9-22-3-11(e) when it no longer owns the vehicle upon receipt of the certificate of title.

The clerk of this Court shall transmit the briefs and appendices in this case as well as a copy of this opinion to the Supreme Court of Indiana.

QUESTION CERTIFIED.