SHAW, Justice.[1]
Sentinel Insurance Company, Limited (“Sentinel”), appeals the declaratory judgment entered in favor of Alabama Municipal Insurance Corporation (“AMIC”) in this dispute between Sentinel and AMIC over which insurance company is responsible for providing primary insurance coverage in 'an-underlying automobile-accident case. We reverse and remand.

Facts and Procedural History .

In September 2005, the City of Opelika (“the City”) entered into an “operations agreement” with ESG Operations, Inc. (“ESG”). Under .the operations agreement, ESG was to perform certain work for the City, including providing workers to perform certain municipal services. The operations agreement also contained an indemnification provision and a provision requiring that both parties to the agreement acquire insurance. The City had previously acquired a “Commercial Auto” insurance policy with AMIC (“the AMIC policy”). Purportedly in an effort to comply with the operations agreement, the City had AMIC add ESG as an “additional insured” on the AMIC policy. ESG obtained its own insurance policy from Sentinel (“the Sentinel policy”).
On April' 28, 2010, Gwendolyn Vaughan, an ESG employee, was operating a street sweeper owned by the City when it collided with a vehicle driven by Roger Clark. The collision injured Clark and his wife, June Clark. On June 1, 2011, the Clarks sued ESG, Vaughan, and the City seeking damages for their injuries.' ’ '
Pursuant to the AMIC policy, ‘ AMIC defended the City in the Clarks’ action. Four months after the Clarks commenced their action, they withdrew their claims against the City, and the City was dismissed from the case. AMIG’s costs in defending the City in the action amounted to $5,507. After the City was .dismissed, the Clarks continued to pursue their claims against ESG and Vaughan.
While the Clarks’ claims were still pending against them, ESG and Vaughan filed a third-party complaint against AMIC, seeking, among other things, a declaration that AMIC was required to defend and indemnify ESG and Vaughan. AMIC filed a third-party complaint against Sentinel, and Sentinel later filed a counterclaim against AMIC. Both .pleadings sought judgments declaring which insurance company was required to defend and indemnify ESG and Vaughan. The Clarks ultimately entered into a settlement agreement with ESG, Vaughan, AMIC, and Sentinel (“the settlement”). AMIC and Sentinel each paid one-half of the settlement amount. The Clarks then released Vaughan and ESG, leaving AMIC and Sentinel, and their respective claims against one another, pending in the trial court.
Sentinel and AMIC later filed dueling requests for a summary judgment in their respective favor seeking to be reimbursed for their part of the settlement amount. Specifically, each insurance company argued that the other’s policy provided primary coverage for ESG and Vaughan, while its own policy merely provided excess coverage. The trial court entered a judgment that stated, in pertinent part:
“Essentially, the Clarks were involved in an automobile accident which involved a street -sweeper operated by [ESG], Gwendolyn Vaughn [sic] is an employee of [ESG]. The undisputed evidence is *643 that [ESG] provides primary public work services for the City of Opelika. Therefore, the employees of ESG are not the employees of the- City of Opelika but [ESG]. The City of. Opelika and [ESG] entered into this agreement whereby ESG would provide these public work services. The operating agreement was negotiated by the parties. The operating agreement states that each party shall obtain and maintain insurance coverage of a type and in the amounts described in appendix G. Paragraph 3 of [a]ppendix G states that:
“ ‘Property damage and liability insurance in a minimum amount not less than One Million Dollars ($1,000,-000.00) for all vehicles owned and operated by ESG under this agreement.’
“After reviewing the insurance policies in place, the court determines that the language used in both is unambiguous and that the Sentinel policy provides primary coverage with respect to the subject accident and that AMIC’s policy is in excess.
“Therefore, it is Ordered, Adjudged and Decreed that Sentinel Insurance Company’s motion for summary judgment and counterclaim for declaratory relief are denied. Furthermore, the relief requested by [AMIC] is hereby granted and judgment is entered in favor of [AMIC].... ”
The trial court required Sentinel to cover the entire settlement.[2] Sentinel appeals.

Standard of Review

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003); We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima. facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce-‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence, of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989),” ’
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004)).”
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala.2009).

Discussion

Sentinel argues -that the trial court erred in holding that “the Sentinel policy provides primary coverage with respect to the subject accident and that AMIC’s policy is excess.” Sentinel’s brief, at 26-27. According to Sentinel, the language in *644 both policies “establishes that the AMIC policy, as the vehicle owner’s policy, provided the primary coverage.” Sentinel’s brief, at 24. Sentinel further argues that, because AMIC’s coverage was primary, AMIC was responsible for the entire settlement because its policy limits were never reached and excess coverage was not required.
We have previously held that “[t]he determination of which insurance coverage is primary and which, if any, is excess or secondary depends on the exact language of the policy.” Nationwide Mut. Ins. Co. v. Hall, 643 So.2d 551, 558 (Ala.1994). See also Isler v. Federated Guar. Mut. Ins. Co., 567 So.2d 1264, 1265 (Ala.1990); Protective Nat’l Ins. Co. of Omaha v. Bell, 361 So.2d 1058 (Ala.1978); and Gaught v. Evans, 361 So.2d 1027 (Ala.1978). Further, insurance contracts give effect to the intention of the parties, and, when that intention is clear and unambiguous, the insurance policy will be enforced as written. See Wakefield v. State Farm Mut. Auto. Ins. Co., 572 So.2d 1220 (Ala.1990). If the terms of an insurance policy are plain and unambiguous, the interpretation of the contract and its legal effect are questions of law. Nationwide Ins. Co. v. Rhodes, 870 So.2d 695, 697 (Ala.2003), “Questions of law are reviewed de novo.” Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).
The AMIC policy stated that AMIC would “pay all sums an ‘insured’ legally must pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies, caused by an
‘accident’ and resulting from the ownership, maintenance or use of a covered ‘auto.’” The AMIC policy defines “insured” as follows:
“The following are ‘insureds’:
“a. You for any covered ‘auto.’
“b. Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow. ...
[[Image here]]
“c. Anyone liable for the conduct of an ‘insured’ described above but only to the extent of that liability.”
(Emphasis added.) The street sweeper Vaughan was using when the accident occurred is listed in the “Schedule of Covered Autos You Own” of the AMIC policy. Vaughan, an ESG employee, was using this “covered auto” with the permission of the City.[3] She is thus an “insured” under subparagraph b. Additionally, under sub-paragraph c, ESG is also an “insured” because it is “liable for the conduct of an ‘insured,’” namely, Vaughan, as its employee.[4]
The AMIC policy also includes an “Other Insurance” provision, which states:
“5. Other Insurance
“a. For any covered ‘auto’ you own, this Coverage Form provides primary insurance. For any covered ‘auto’ you don’t own, the insurance provided by this Coverage Form is excess over any other collectible insurance.”
(Emphasis added.) Because the street sweeper involved in the underlying accident was a “covered auto” being used by an “insured” — Vaughan—under the AMIC *645 policy, coverage under the AMIC policy is “primary” in this case, within the parameters of the “Other Insurance” provision of the policy.
AMIC contends, however, that its coverage of ESG and Vaughan is “excess” because, it says, ESG’s status as an “additional insured” limits the coverage available to it under the policy. Specifically, AMIC points out that its policy lists ESG as an “additional insured as their interests may appear.” According to AMIC, there is “overwhelming testimony” that this language limits ESG’s coverage under the AMIC policy only to situations where “the City of Opelika was negligent.” AMIC’s brief, at 22. Nevertheless, whatever more limited coverage might exist as to an “additional insured” under the AMIC policy, both Vaughan and ESG, under the terms of that policy, are “insureds,” and the accident involved a “covered auto.” Under the clear language of the AMIC policy, the coverage provided, under the facts of this case, is primary. Cf. Nationwide Mut. Ins. Co. v. Hall, 643 So.2d 551, 559 (Ala.1994) (rejecting the argument that an “other insurance” provision gave primary coverage to a “named insured” but not an “additional insured” because the ‘“other insurance’ provision makes no distinction between ‘named insureds’ and ‘additional insureds’ ”).
It is undisputed that the Sentinel policy also provided coverage to ESG and Vaughan in this case. It includes the following section concerning “Other Insurance,” which is identical to the same provision in the AMIC policy: .
“5. Other Insurance
“a. For any covered ‘auto’ you own, this Coverage Form provides primary insurance. For any covered ‘auto’ you don’t own, the insurance provided by this Coverage Form is excess over any other collectible insurance....
[[Image here]]
“c. Regardless of the provisions of Paragraph a. above, this Coverage Form’s Liability Coverage is primary for any liability assumed under an ‘insured contract.’ ”
(Emphasis added.) Sentinel contends that the first sentence of subparagraph a does not apply because ESG and Vaughan did not “own” the street sweeper. Thus, Sentinel argues, under the second sentence of .subparagraph a, its coverage is not “primary” but is instead “excess.”
In its brief on appeal, AMIC contends that subparagraph c of the “Other Insurance” provision of the Sentinel policy provides primary coverage “for any liability assumed under an ‘insured contract.’” (Emphasis added.) AMIC’s brief, at 29. AMIC contends that the operations agreement between the City and ESG is an “insured contract” and that, thus, under subparagraph c, the Sentinel policy provides primary coverage. We disagree.
Nothing before us indicates that ESG’s liability for which it seeks coverage under the AMIC policy (the settlement with the Clarks) was “assumed” from “another.” Instead, the driver, Vaughan, and ESG, as Vaughan’s employer, were the actual tort-feasors in this case. They have not “assumed” the liability of another; they are instead directly liable independently of a contractual assumption of liability.
It is true that, in the operations agreement, ESG was required to indemnify and hold the City harmless for liability stemming from ESG’s own negligence.[5] The City, however, was not a party to the settlement, and the plaintiffs withdrew any *646 ciatos against the City long before the settlement was reached. It.appears that ESG did indemnify the City for its initial costs to defend itself at the beginning of the action, but nothing before us indicates that the settlement discharged liability on the City’s part. Because, the liability for which ESG seeks coverage was not “assumed” from the City, subparagraph c does not apply. Because it does not apply, the Sentinel policy designates itself under subparagraph a as providing excess coverage.

Conclusion

After reviewing the AMIC= policy and the Sentinel policy, we conclude that the language in each is unambiguous as to which provides primary coverage: The AMIC policy provides primary coverage, and the -Sentinel policy provides excess coverage. For the foregoing reasons, we hold that the trial court erred in concluding that the Sentinel policy provided primary coverage. Therefore, the trial court’s judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, MURDOCK, MAIN, WISE-, and BRYAN, JJ., concur.
MOORE, C.J., and PARKER, J.,' dissent.

. This case was originally assigned to another Justice; it was reassigned to Justice Shaw on December 8, 2014.

. The trial court also required Sentinel to pay the $5,507 in costs incurred by AMIC in the City's defense in the Clarks’ action. Sentinel does not challenge on appeal that portion of the trial court’s order. ■

. Section 3.6 of the operations agreement states that the City, as the "Owner” under the operations agreement, "shall ... provide for ESG's use all vehicles and equipment currently in use ... including the vehicles described in Appendix E.” Those vehicles include “all city equipment” for the "street department.”

. The parties wrangle with whether ESG could also be considered a permissive user under subparagraph a. Because subparagraph c clearly applies to ESG, we pretermit discussion of that issue.

. Section 7 of the operations agreement is entitled "Indemnity, Liability and Insurance.” Section 7.1 states:
"ESG hereby agrees to and shall hold [the City] harmless ... from any liability or damages for property damage or bodily in *646 jury, including death, which may arise from ESG’s negligent operations under. this Agreement, to the proportion such negligence contributed to the damages, injury, or, loss, whether such negligent operation be by ES'G or by subcontractor of ESG. [The City] agrees to and shall hold ESG harmless from any liability or damages for property damage or bodily injury, including death, which may arise from all causes of any kind other than ESG’s negligence,”
AMIC contends that neither it nor the City contemplated that it would be liable for damages resulting from ESG’s own negligence. This understanding, however, was not memorialized in the- insurance policies. Furthermore,. the operations agreement specifically required the City to insure the vehicles it owned and ESG would be operating.