Hon. Jane Magnus-Stinson, Chief Judge
In 1987, Plaintiff Melvin Couch purchased a universal life insurance policy from Lamar Life Insurance Company which was ultimately transferred to Defendant Wilco Life Insurance Company ("Wilco"). Over time, the amount Mr. Couch was required to pay to keep the universal life insurance policy in effect increased, which Mr. Couch contends was contrary to the policy's terms. The policy ultimately lapsed, and Mr. Couch initiated this litigation in June 2018. He asserts claims against Wilco for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Mr. Couch brings his claims on behalf of himself and a class of individuals who he claims have also been subjected to Wilco's impermissible practices. Wilco has filed a Motion to Dismiss all of Mr. Couch's claims, [Filing No. 20 ], and that motion is now ripe for the Court's review.
I.
STANDARD OF REVIEW
Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus , 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Bell Atlantic v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. See Active Disposal Inc. v. City of Darien , 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. See McCauley v. City of Chicago , 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." Munson v. Gaetz , 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.
*890 II.
BACKGROUND
The following are the factual allegations in the Amended Complaint, which the Court must accept as true at this time:
On July 24, 1987, Mr. Couch purchased a universal life insurance policy, Policy No. 000511319 (the "Policy"), from Lamar Life Insurance Company ("Lamar"). [Filing No. 13 at 3-4.] Lamar subsequently sold the Policy to Wilco, or Lamar merged into or was acquired by Wilco or one of Wilco's predecessors. [Filing No. 13 at 4.] As a result, Wilco assumed all liability for the Policy as if it had originally been issued by Wilco. [Filing No. 13 at 4.]
Generally, universal life insurance policies:
provide[ ] more flexibility than whole or term life insurance. Premium payments, which are variable, are deposited in an accumulation account from which monthly cost of insurance and expense charges are deducted. The accumulation account is credited with monthly interest at a nonguaranteed declared rate, but not less than the guaranteed interest rate specified in the policy. Universal life insurance policies generally allow policyholders to change the amount and frequency of premium payments as long as they make their planned periodic premium and their policy contains sufficient cash value to cover monthly deductions.
[Filing No. 13 at 6-7.]
The Policy, which is attached as an exhibit to the Amended Complaint, includes numerous provisions which are relevant to this litigation, and are reproduced below:
*891 *892 [Filing No. 13-1 at 4-21.]
Mr. Couch's Planned Premium when he purchased the Policy in 1987 was $ 81.00 per month, which was to be automatically deducted from his checking account. [Filing No. 13 at 14.] Wilco's agents assured *893 Mr. Couch that his premium would never increase and that the Policy would offer a death benefit and provide investment income in the form of guaranteed monthly interest. [Filing No. 13 at 14-15.] Instead, Wilco consistently raised Mr. Couch's premium and cost of insurance ("COI") rates far above the initial agreed-upon Planned Premium and to an amount Mr. Couch could no longer afford. [Filing No. 13 at 15.] By July 2018, Mr. Couch's premium had grown to $ 274.00. [Filing No. 13 at 15.] Instead of timely disclosing the premium increases, Wilco would take the increased costs from policyholders' cash value in their policies ("Accumulated Value"), deplete the Accumulated Value, and then send a letter informing policyholders that their two-month grace period had started and demanding payment to keep the policy in force. [Filing No. 13 at 15.] Mr. Couch's Policy ultimately lapsed and terminated without cash value, despite the fact that Mr. Couch dutifully paid premiums for several decades. [Filing No. 13 at 15-16.]
Mr. Couch alleges that Wilco raised its COI rates not because of material adverse changes in Wilco's relative risk of insurance, but for a number of other reasons including: (1) that Wilco suffered massive losses due to the self-dealing of its corporate parent, CNO Financial Group, Inc., and other affiliates; (2) litigation involving Wilco's insurance policies which have caused significant losses; (3) to offset the contractual interest payments it owes to policyholders and to recoup losses; and (4) to inflict massive shock lapses through the monthly COI rates and premium increases. [Filing No. 13 at 16-28.]
Mr. Couch filed his initial Complaint on June 11, 2018, and filed the operative Amended Complaint on June 21, 2018. [Filing No. 1; Filing No. 13.] He alleges claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief. [Filing No. 13 at 34-37.] Mr. Couch asserts his claims on behalf of a class of:
All persons who have been subjected to Wilco's recent impermissible cost of insurance increases and/or its depletion of the policies' cash value to cover the cost of insurance increases and/or premium increases, excluding policyholders covered by the settlements in [certain other insurance-related litigation].
[Filing No. 13 at 31.] Wilco has moved to dismiss all of Mr. Couch's claims. [Filing No. 20.]
III.
DISCUSSION
Wilco sets forth three main arguments in support of its Motion to Dismiss: (1) that Mr. Couch's allegations that Wilco breached the Policy by increasing the Planned Premium or Month's Deduction and by setting the COI rates using impermissible factors fail to state a cognizable claim; (2) that Mr. Couch's allegations of bad faith do not state an actionable claim; and (3) that Mr. Couch's request for declaratory relief is duplicative of his breach of contract claim. [Filing No. 21.] The Court will address Wilco's arguments in turn.
At the outset, however, the Court addresses which state's substantive law applies to this matter. A federal court sitting in diversity, as this Court does, must apply the choice of law provisions of the forum state. Storie v. Randy's Auto Sales, LLC , 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice-of-law rules determine the applicable substantive law"). The parties agree that Alabama law applies to Mr. Couch's claims. [See Filing No. 21 at 19 (Wilco arguing that, under Indiana's choice-of-law rules, Alabama has the most *894 intimate contacts with the dispute at issue in this case); Filing No. 25 at 17 n.2 (Mr. Couch stating that he "analyzes his claims under Alabama law for purposes of Wilco's motion to dismiss").] Absent a disagreement, the Court will apply Alabama law. Mass. Bay Ins. Co. v. Vic Koenig Leasing , 136 F.3d 1116, 1120 (7th Cir. 1998) ; Wood v. Mid-Valley, Inc. , 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.... Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)").
A. Breach of Contract
Mr. Couch sets forth two theories within his breach of contract claim, which the Court will treat separately: (1) breach of contract for increasing the Planned Premium or Month's Deduction to a level above the agreed-upon Planned Premium; and (2) breach of contract for setting the COI rate using impermissible factors. The Court sets forth the applicable law regarding contract interpretation, before turning to Mr. Couch's specific claims.
Under Alabama law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application which is a part of the policy." Al. Code § 27-14-17(a). Like other contracts, insurance contracts "are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C. , 703 So.2d 866, 870 (Ala. 1996) (citation omitted). "When its intention is clear and unambiguous, the court shall enforce an insurance policy as written." Madison County v. Evanston Ins. Co. , 340 F.Supp.3d 1232, 1260 (N.D. Ala. 2018) (citation omitted). Where an insurance policy contains plain and unambiguous terms, "the interpretation of the contract and its legal effect are questions of law." Sentinel Ins. Co., Ltd. v. Alabama Mun. Ins. Corp. , 188 So.3d 640, 644 (Ala. 2015) (citing Nationwide Ins. Co. v. Rhodes , 870 So.2d 695, 697 (Ala. 2003) ).
When determining whether an ambiguity exists, courts applying Alabama law:
should apply the common interpretation of the language alleged to be ambiguous.... This means that the terms of an insurance policy should be given a rational and practical construction.... The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning.... In the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage.
Madison County , 340 F.Supp.3d at 1260 (citations and quotations omitted). The Court will consider the sufficiency of Mr. Couch's Amended Complaint within these parameters set forth under Alabama law.
1. Charging More Than the Planned Premium
Mr. Couch alleges in the Amended Complaint that the Policy does not permit Wilco to increase the Planned Premium or the Month's Deduction to an amount beyond *895 the Planned Premium. [Filing No. 13 at 9.]
Wilco contends that Mr. Couch's claim is based on the faulty premise that the Planned Premium is the amount required to sustain coverage under the Policy, but instead the Policy provides that when the Cash Surrender Value is not enough to cover the Month's Deduction, the Policy enters the Grace Period. [Filing No. 21 at 21.] Wilco distinguishes between "Planned Premium" and the Policy's use of the term "Premium" in the Grace Period provision. [Filing No. 21 at 21.] It argues that "when Wilco...notified [Mr.] Couch that his Policy had entered a Grace Period and that he needed to pay additional 'Premium' to keep the Policy in force, Wilco...did not increase the Planned Premium. It simply notified [Mr.] Couch of the premium amount described in the Grace Period provision." [Filing No. 21 at 21.] Wilco argues that the Policy unambiguously allows it to request more than the Planned Premium to keep the Policy in force, and points to several Policy provisions which it argues "make clear that the amount of Premium required to keep the Policy in force could be greater than the Planned Premium." [Filing No. 21 at 21-23.] Wilco explains that "[a]s [Mr.] Couch admits, the applicable interest rate decreased substantially after he purchased the policy.... At the same time, the COI charge deducted from [Mr.] Couch's Accumulated Value increased because COI rates go up as the insured gets older.... Because [Mr.] Couch continued to pay the same Planned Premium, the Cash Surrender Value decreased until - as specified in the Grace Period provision - additional Premiums were required to cover the upcoming Month's Deduction." [Filing No. 21 at 23-24.] Wilco notes that the Annual Reports warn that the Planned Premium may not be enough to keep the Policy in force. [Filing No. 21 at 24.][1]
In his response, Mr. Couch argues that under the Policy he agreed to pay Planned Premiums "that Wilco could not increase directly or indirectly by raising [COI] rates." [Filing No. 25 at 18.] He contends that based on the express language of the Policy, Unscheduled Premiums are not needed to keep the Policy in force as long as the policyholder pays the Planned Premiums, and that "a policy cannot lapse while a policyholder pays his or her Planned Premiums, and a policyholder would only have to consult the Cash Surrender and Accumulated Value provisions if and when he or she decides to stop paying Premiums altogether." [Filing No. 25 at 19-20.] Mr. Couch argues that the Cash Surrender and Accumulated Value provisions contradict the premium provisions, that they are ambiguous, and that they should be construed in his favor. [Filing No. 25 at 21-22.] He asserts that the Grace Period provision can be read to mean that a policyholder only enters the *896 grace period if he or she has stopped paying premiums altogether or where there was an unpaid Policy Loan Balance. [Filing No. 25 at 22.] Mr. Couch also argues that Wilco's reliance on warnings in the annual reports is misplaced, as "the Annual Report provision links the risk of insufficient Cash Surrender Value to an outstanding Policy Loan Balance and reinforces the understanding that, so long as a Policyholder pays Planned Premiums and avoids loans, the policy will remain in force." [Filing No. 25 at 23.]
In its reply, Wilco discusses Policy provisions which it contends show that the Planned Premiums were not the only amounts that policyholders would need to pay to keep the Policy in force. [Filing No. 26 at 6-7.] Wilco contends that Mr. Couch ignores other Policy provisions which require the policyholder to maintain the Accumulated Value to keep the Policy in force, so his reading of the Policy is not reasonable. [Filing No. 26 at 7.] Wilco notes that the Grace Period and Accumulated Value provisions do not only come into play if the policyholder stops paying premiums completely. [Filing No. 26 at 7-8.] It argues that Mr. Couch's own characterization of universal life insurance indicates that premiums are flexible, that the annual reports attached to the Amended Complaint warn that the current value of the Policy plus the Planned Premium may not be enough to keep the Policy in force, and that cases Mr. Couch cites in his response brief contradict his theory. [Filing No. 26 at 9-11.]
The Policy contains several provisions relating to the Planned Premium. First, the Policy distinguishes between three types of "Premiums" - the Initial Premium, the Planned Premiums, and Unscheduled Premiums. [Filing No. 31-1 at 4.] "Planned Premiums" are defined as those that the insured intends to make on a regular basis, and the amount of the Planned Premium is chosen by the insured. [Filing No. 13-1 at 4.] The Policy provides, through several different provisions, that the Planned Premium may not be enough to keep the Policy in effect. These provisions, when given their plain meaning and read together, provide the following:
(1) 92.5% of Premiums paid each month, which include the Planned Premium and any unscheduled premiums the insured pays, are credited toward the Policy (the "Gross and Net Premiums" provision, [Filing No. 13-1 at 8 ] );
(2) the Month's Deduction, which includes the COI among other things, pays the cost of the Policy for the previous month (the "Month's Deduction" provision, [Filing No. 13-1 at 9 ] );
(3) the COI can change, but the rate may not exceed rates listed on the tables included in the Policy, and changes must be applied on a uniform basis for insureds with certain common characteristics (e.g. , age at issuance of the Policy) (the "Cost of Insurance Rate" provision, [Filing No. 13-1 at 21 ] );
(4) Net premiums, along with the Policy's Accumulated Value for the prior month and any interest credited, minus the Month's Deduction and prior Partial Cash Surrenders, make up the Policy's current Accumulated Value ("How we calculate the Accumulated Value...(2) on a Monthly Anniversary," [Filing No. 13-1 at 10 ] );
(5) the Cash Surrender Value is the Accumulated Value less a surrender charge (the "Cash Surrender Value" provision, [Filing No. 13-1 at 9 ] );
(6) the Policy can enter a Grace Period when the Cash Surrender Value, minus the value of any Policy Loan Balance less unearned loan interest, on any Monthly Anniversary, is not enough to cover the Month's Deduction for the *897 next Policy Month (the "Grace Period" provision, [Filing No. 13-1 at 10 ) ]; and
(7) insureds will receive an Annual Report at least once a year, which will warn them if the Cash Surrender Value plus Planned Premiums for the coming reporting period may not be sufficient to keep the Policy in effect until the end of the period (the "Annual Report" provision, [Filing No. 13-1 at 15 ] ).
Applying the Alabama principles of contract interpretation noted above, the plain language of the Policy precludes any claim that Wilco could not increase the Planned Premium. The Planned Premium is an amount chosen by the insured and not Wilco, and the plain language precludes any claim that Wilco could not increase the Month's Deduction because that figure is dependent on the COI, which the Policy specifically states can change over time. Unlike other types of insurance policies such as automobile liability or homeowners insurance policies, where the term "premium" is commonly understood to be the amount an insured must pay to keep a policy in force, the Planned Premium for the Policy at issue here is just one piece of the puzzle. Because of the Policy's savings component, and because the COI increases as the insured gets older, the Policy clearly states that the Planned Premium may eventually not be enough to keep the Policy in effect.
That is what happened here, and that precise scenario is contemplated by the Policy. Indeed, Wilco warned Mr. Couch of that possibility in several Annual Reports that Mr. Couch attaches to his Amended Complaint, and which he received long before the Policy ultimately terminated. [See, e.g. , Filing No. 13-2 at 3 (July 24, 2017 Annual Report stating "NOTICE - THE CURRENT CASH VALUE, PLUS PLANNED PREMIUM PAYMENTS OF $ 81.00 MONTHLY, MAY NOT BE SUFFICIENT AT THE GUARANTEED INTEREST RATES TO CONTINUE COVERAGE UNTIL THE NEXT POLICY ANNIVERSARY"); Filing No. 13-2 at 7 (July 24, 2016 Annual Report containing same warning and stating that "IF NO FURTHER PREMIUMS ARE RECEIVED, ASSUMING CURRENT ASSUMPTIONS, ON SEPTEMBER 24, 2017 YOUR POLICY WILL HAVE INSUFFICIENT VALUE TO REMAIN IN FORCE").]
Mr. Couch's breach of contract claim based on Wilco increasing the Planned Premium or the Month's Deduction fails as a matter of law based on the plain language of the Policy, and Wilco's Motion to Dismiss as to that claim is GRANTED .
2. Setting COI Rates Based on Impermissible Factors
In his second breach of contract claim, Mr. Couch alleges that Wilco has "depleted the accumulation account based on impermissible factors and in order to offset its interest obligations, recoup past losses, and ensure a large percentage of policyholders lapse on or surrender their policies." [Filing No. 13 at 35.]
Wilco argues in its Motion to Dismiss that COI rates did not increase during the time the Policy was in effect and that, while COI rates do increase as a policyholder gets older, the rates were always determined using the Policy's Table of Guaranteed Monthly Cost of Insurance Rates (the "Table"). [Filing No. 21 at 30.] Wilco contends that Mr. Couch does not allege that Wilco ever charged in excess of the rates specified in the Table. [Filing No. 21 at 30.] Further, Wilco asserts that the Policy does not restrict or limit how Wilco sets COI rates, as long as those rates remain below the guaranteed maximum set forth in the Table. and that any change in the COI rate is applied on a uniform basis for insureds of the same age at issue, sex, risk class rating, duration, and specified *898 amount. [Filing No. 21 at 31-34.] Wilco notes that Mr. Couch does not allege "that the supposed COI rate increase (assuming it occurred) was not implemented on a uniform basis across Insureds 'of the same Age at Issue, Sex, Risk Class Rating, Duration, and Specified Amount.' " [Filing No. 21 at 31.]
In response, Mr. Couch argues that Wilco increased his COI rates from the time he purchased the Policy to the time the Policy terminated. [Filing No. 25 at 28.] Mr. Couch contends that Wilco argues that an increase in COI rates was acceptable because the rates were determined when the Policy was sold, but that "Wilco's argument is premature and the policy's complex history calls for discovery to address Wilco's arguments." [Filing No. 25 at 28.] Mr. Couch notes that he has alleged that Wilco can only increase the COI rate based on increased mortality risk or "the relative risk of insurance," and that this limitation is consistent with several Policy provisions. [Filing No. 25 at 28-29.] He asserts that the Policy provisions "when read together (as they must), only allow Wilco to increase the COI Rate to account for a policyholder's increased mortality risk, not Wilco's profitability." [Filing No. 25 at 30.] Mr. Couch argues that he has adequately alleged a breach of contract claim because he "carefully details that Wilco increased COI rates for a number of reasons that violate the Policy." [Filing No. 25 at 34.]
In its reply, Wilco argues that an increase in the amount Wilco deducted from Mr. Couch's cash value "does not in any way indicate an increase in the COI rate scale established at the pricing of [the] Policy. Even without any change in the COI rate scale, [Mr.] Couch's Monthly Deduction was guaranteed to increase each year because the COI rate used to calculate the Monthly Deduction goes up each year as the policyholder ages and becomes riskier to insure." [Filing No. 26 at 13 (emphasis omitted).] Wilco asserts that the annual statements attached to Mr. Couch's Amended Complaint show that "the lapse of [the] Policy was consistent with normal operation of [the] Policy, and inconsistent with the alleged increase in the COI rate scale." [Filing No. 26 at 14.] Finally, Wilco argues that even if it raised COI rates, Mr. Couch has not plausibly alleged that the decision to raise COI rates was somehow connected to impermissible factors. [Filing No. 26 at 17-19.]
Again, the Court turns to the Policy's language. The Policy provides that:
The COST OF INSURANCE RATE is the amount charged monthly per $ 1,000 of Net Amount at Risk. We guarantee a maximum Cost of Insurance Rate for each Sex, Attained Age, and Risk Class Rating. Some tables of these guaranteed maximum Cost of Insurance Rates are found in the Section entitled "XI APPENDIX 2." These rates are listed for various table ratings.... Any change in the monthly Cost of Insurance Rate will be applied on a uniform basis for Insureds of the same Age at Issue, Sex, Risk Class Rating, Duration and Specified Amount.
[Filing No. 13-1 at 21.] The COI provision refers to the Table, which sets forth the monthly COI "Per $ 1000 of Net Amount at Risk." [Filing No. 13-1 at 22-23.]
The Policy promises two things related to COI: (1) the COI rate for each sex, age, and Risk Class Rating will not exceed the rates in the Table; and (2) any change will be applied on a uniform basis for insureds of the same age at issue, sex, Risk Class Rating, duration and specified amount. Mr. Couch does not allege that Wilco breached the Policy by failing to perform on either of those two promises. He does not allege that the COI he was charged ever exceeded the rates in the Table, nor does he *899 allege that any change in COI was not applied on a uniform basis. Instead, Mr. Couch argues that the Policy promises a third thing: that Wilco would determine the COI based on the policyholder's age, sex, and Risk Class Rating - all factors that are tied to an insured's mortality. But the Policy does not make such a promise. The COI provision does not include the "based on" language that Mr. Couch reads into it.
Mr. Couch's reliance on other Policy provisions to support his reading of the COI provision is unavailing. First, he argues that the "Risk Class Rating" provision "relate[s]...to a policyholder's mortality risk" and "specifically reflects a policyholder's 'relative risk of insurance.' " [Filing No. 25 at 29.] But simply including Risk Class Rating in the list of characteristics reflected in the COI rates set forth in the Table does not lead to the conclusion that mortality is the only consideration for determining the COI. Second, Mr. Couch argues that the Policy's guaranteed values "are based on projections of lifespan established [in the Table], including 'the cost of insurance on a guaranteed basis,' 'minimum Accumulated Values,' 'minimum Cash Surrender Values,' and 'reserves for future benefits.' " [Filing No. 25 at 29.] He does not expand on his argument, and the Court fails to see how this shows that Wilco was limited to considering mortality when determining COI. Third, Mr. Couch asserts that because the Month's Deduction includes a $ 4.00 Policy fee and Wilco retains 7.5% of a policyholder's Gross Premiums, "[p]resumably, Wilco takes a fixed portion of a policyholder's Gross Premiums and a Policy Fee to account for factors outside of a policyholder's mortality risk." [Filing No. 25 at 30.] Again, this argument does not support Mr. Couch's reading of the COI provision, and is speculative at best. Finally, Mr. Couch argues that Wilco's reading of the COI would render the Policy's interest provision - which guarantees a minimum interest rate of 4.5% per annum, compounded annually - meaningless and that the interest provision and the COI provision "operate independently of one another, thereby precluding Wilco from offsetting or subsidizing its interest obligations by increasing the [COI] Rate." [Filing No. 25 at 30.] The plain language of the interest provision and the COI provision does not support the interplay between the two provisions that Mr. Couch advocates. Indeed, as discussed above, the Policy's language contemplates that the COI may change over time, as the policyholder gets older. [Filing No. 13-1 at 21.]
Further, most of the cases Mr. Couch relies upon involved different policy language and specifically set forth the factors the insurer could consider when setting the rates at issue. See, e.g., Vogt v. State Farm Life Ins. Co. , 2018 WL 1747336, *1 (W.D. Mo. 2018) (policy stated that Monthly COI rates "are based on the Insured's age on the Policy anniversary, sex, and applicable rate class"); EFG Bank AG, Cayman Branch v. Transamerica Life Insurance Co. , 2017 WL 3017596 (C.D. Cal. 2017) (policy at issue provided that Maximum Monthly Deduction rates (analogous to COI rates) "will depend on: the face amount of the policy; the Insured's sex; the Insured's smoker or nonsmoker status; the Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and the insured's Age on the Policy Date"); EFG Bank AG v. Lincoln National Life Ins. Co. , 2017 WL 4222887, *1 (E.D. Pa. 2017) (COI provision stated "cost of Insurance (COI) rates are based on certain cost factors, including mortality, interest, expenses and lapses"); Feller v. Transamerica Life Ins. Co. , 2016 WL 6602561, *2 (C.D. Cal. 2016) (at least one plaintiff's policy stated "[t]he monthly *900 deduction rate for the base policy will depend on the face amount of the policy; the Insured's sex; the Insured's smoker or nonsmoker status; the Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and the Insured's issue age"); Dean v. United of Omaha Life Ins. , 2007 WL 7079558, *1 (C.D. Cal. 2007) (policy provided that monthly COI charge "is based on the Insured's attained age, sex, and rate and risk classes").[2]
The fact that the COI provision does not state that the COI rate will be "based on" or "depend upon" certain factors is fatal to Mr. Couch's claim. Moreover, even if the provision did contain such language, Mr. Couch's claim still would not be viable. The Seventh Circuit Court of Appeals has determined that where a COI provision lists factors that the insurer will consider, the insurer is not limited to considering only the factors listed. In Mai Nhia Thao v. Midland Nat. Life Ins. Co. , 549 Fed. Appx. 534 (7th Cir. 2013), the COI provision stated that the rate would not exceed the rates listed in a table and that the rate would be "based on the Issue Age, completed Policy Years, Sex, Specified Amount, and Premium Class of the Insured." Id. at 537 (emphasis omitted). The Seventh Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the insurer, explaining:
[W]hen the policy says that the monthly cost of insurance rate will be 'based on' specified factors, it does not mean that the rate will be based exclusively on those factors.... [The] named factors...serve to both differentiate one insured from another and insure that similarly situated insureds will be treated alike in the amounts they are charged for the cost of insurance. By contrast, the other, unidentified factors that [the insurer] considers in setting the cost of insurance rate have less to do with the characteristics of the individual insured and much more to do with the broader financial risks, performance, and goals of [the insurer's] business as a for-profit life insurance company and with the type of policy the insured has chosen.
Id. at 537-38 ; see also Norem v. Lincoln Benefit Life Co. , 737 F.3d 1145, 1154-55 (7th Cir. 2013) (affirming grant of summary judgment for insurer and stating that cases holding to the contrary "imply that a for-profit life insurance company should not be allowed to make a profit on its COI rates. This approach, however, seems disconnected from the reality of insurance. Certainly no one expects that an auto or home insurer should make no profit on the premiums charged. Similarly, it is not unreasonable in a universal life insurance policy to consider profit as a secondary factor in calculating the COI rate, as no one is suggesting that [the insurer] is not a for-profit entity").
The Policy does not restrict the factors that Wilco may consider in determining *901 the COI rate, other than to limit the maximum rate to the rates set forth in the Table, and to require that any changes in the COI rate be applied on a uniform basis.[3] Because Mr. Couch does not base his breach of contract claim on either of these restrictions, his breach of contract claim related to Wilco's setting of COI rates based on impermissible factors fails as a matter of law, and Wilco's Motion to Dismiss that claim is GRANTED .
B. Breach of the Implied Covenant of Good Faith and Fair Dealing
In his breach of the implied covenant of good faith and fair dealing claim, Mr. Couch alleges that, to the extent Wilco had the discretion to increase COI rates, it increased the rates to: "a. Recoup past losses; b. Force Plaintiff and class members to surrender or lapse on their policies so Wilco would not have to provide further coverage or pay death benefits; and c. Negate the value of what were intended to be guaranteed interest rates, which Wilco has no right to do." [Filing No. 13 at 36.]
In support of its Motion to Dismiss, Wilco argues that a breach of the covenant of good faith and fair dealing claim under Alabama law can only be based on failure to settle a claim where there is no lawful basis for the refusal to settle and actual knowledge of that fact, and an intentional failure to determine whether there was any lawful basis for the refusal. [Filing No. 21 at 36.] Because Mr. Couch's claim is not based on Wilco's refusal to settle a claim, Wilco argues, Mr. Couch's claim should be dismissed. [Filing No. 21 at 36-37.] Additionally, Wilco argues that Mr. Couch does not sufficiently allege that Wilco breached the Policy, which is fatal to any breach of the covenant of good faith and fair dealing claim. [Filing No. 21 at 37-38.]
In response, Mr. Couch argues that the limitations Wilco discusses in connection with breach of the covenant of good faith and fair dealing claims under Alabama law only apply to cases related to the handling of claims. [Filing No. 25 at 35.] He asserts that he has adequately alleged a claim because he "alleges that Wilco abused its discretion under the policy's premium and COI rate provisions to recoup prior losses stemming from self-dealing and litigation, force Mr. Couch and other class member[s] to surrender or lapse on their policies so Wilco would not have to provide further coverage or pay death benefits, and negate the value of what were intended to be guaranteed interest rates." [Filing No. 25 at 36.]
Wilco argues in its reply that Mr. Couch "seems to concede that his claim for breach of good faith and fair dealing is merely his breach of contract claims dressed in new garb," and that "[t]here are breach of contract claims and there are bad faith denial of insurance benefits claims[; t]here is not a separate cause of action under Alabama law for 'breach of the duty of good faith and fair dealing.' " [Filing No. 26 at 19.]
The elements of a bad faith claim under Alabama law are: "(1) a breach of an insurance contract; (2) the intentional refusal to pay a claim; (3) the absence of an arguable reason for the refusal; and (4) the insurer's knowledge of the absence of an arguable reason for the refusal."
*902 Georgia-Pacific Consumer Products LP v. Zurich American Ins. Co. , 184 F.Supp.3d 1337, 1340 (S.D. Ala. 2016). Mr. Couch does not allege that Wilco refused to pay a claim, so he has not adequately alleged a breach of the covenant of good faith and fair dealing claim under Alabama law. Moreover, because the Court has already determined that Mr. Couch's breach of contract claims fail as a matter of law fail, he cannot adequately allege the first element of a breach of the covenant of good faith and fair dealing claim - a breach of the Policy. See Davis v. State Farm Fire and Casualty Co. , 2017 WL 4038407, *11 (N.D. Ala. 2017) ("Without breach of contract, there can be no bad faith") (citing Shelter Mut. Ins. Co. v. Barton , 822 So.2d 1149, 1154 (Ala. 2001) ). The Court GRANTS Wilco's Motion to Dismiss as to that claim.
C. Request for Declaratory Relief
In his Amended Complaint, Mr. Couch seeks "a declaration as to the parties' respective rights under the policies and requests the Court to declare that the premium and cost of insurance rate increases are unlawful and in material breach of the policies' terms so that future controversies may be avoided," and "a declaration that the cost of insurance rate increases materially breach the policies, and that Wilco must determine the cost of insurance rates only on the grounds authorized under the policies." [Filing No. 13 at 37-38.]
Wilco argues in support of its Motion for Summary Judgment that Mr. Couch's request for declaratory relief is duplicative of his breach of contract claim. [Filing No. 21 at 38.] It asserts that "[r]esolving whether [Mr.] Couch is entitled to this declaration is necessarily bound up in resolution of [his] breach of contract claim - the Court cannot resolve the breach of contract claim without first determining whether [Wilco's] alleged wrongdoing amounts to an 'unlawful' and 'material' breach. Declaring that [Wilco] breached the contract there 'add[s] nothing of substance to this case.' " [Filing No. 21 at 38.]
In response, Mr. Couch argues that "courts generally refuse to dismiss claims for declaratory relief despite arguments, like the one made by Wilco here, that the claim duplicates a claim for breach of contract." [Filing No. 25 at 37.]
In its reply, Wilco asserts that "[a]ll of [Mr.] Couch's requested declarations live or die based on the finding of a breach. Because he has failed to allege an actionable breach of contract, he has failed to allege entitlement to the declaratory relief he seeks." [Filing No. 26 at 20.]
The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Even if a declaratory judgment action is within its jurisdiction, "the federal courts have discretion to decline to hear [it]." Tempco Elec. Heater Corp. v. Omega Engineering, Inc. , 819 F.2d 746, 747 (7th Cir. 1987) (citations omitted). Courts commonly exercise their discretion and dismiss declaratory judgment claims where they are duplicative of breach of contract claims. See, e.g., Cliffs Mining Co. v. Wisconsin Electric Power Co. , 2018 WL 6181470, *7 (E.D. Wis. 2018) (dismissing declaratory judgment claim and finding that because that claim duplicated breach of contract claim, it "serves no useful purpose"); Hess v. Biomet, Inc. , 2017 WL 661511, *12 (N.D. Ind. 2017) ("Because [the declaratory judgment claim] does not state a viable claim for relief not already raised in [the breach of contract claim], the Court in an exercise of its discretion dismisses [the declaratory judgment claim]") (emphasis omitted).
*903 The Court views Mr. Couch's declaratory judgment claim bearing in mind that it has already dismissed his breach of contract claims. Mr. Couch's first request - that the Court declare the parties' rights under the policies - is essentially moot since the Policy has lapsed. His second request - that the Court declare the premium and COI rate increases to be unlawful and in material breach of the Policy's terms and that Wilco may determine the COI rates only on the grounds authorized under the Policy - is duplicative of Mr. Couch's breach of contract claims. Accordingly, because of its duplicative nature, the Court exercises it discretion and GRANTS Wilco's Motion to Dismiss as to Mr. Couch's declaratory judgment claim. See Sweet v. Indianapolis Jet Center, Inc. , 918 F.Supp.2d 801, 804 (S.D. Ind. 2013) (dismissing declaratory judgment claim where it was "wholly subsumed by...claim for breach of contract" and "[t]he declaratory relief sought...would add nothing to the relief [plaintiff] will be entitled to if he ultimately is successful in his breach of contract claim").
IV.
CONCLUSION
Mr. Couch has not adequately alleged that Wilco took any action that was not permitted by the clear and plain language of the Policy. Consequently, his claims fail as a matter of law and the Court GRANTS Wilco's Motion to Dismiss, [20], and dismisses all of Mr. Couch's claims with prejudice.[4] Claims of any putative class member are dismissed without prejudic. Final judgment will enter accordingly.

Wilco also presents documents which it argues indicate that Mr. Wilco made a Partial Cash Surrender of $ 2,400 from the Policy's Accumulated Value of $ 4,166.55, contends that "[Mr.] Couch cannot credibly argue that he believed his Planned Premium would be sufficient to maintain his Policy when he withdrew approximately 58% of the Accumulated Value in 1993," and attaches a Statement of Policy Costs and Benefit Information that it argues provided notice to Mr. Couch that additional premiums might be needed. [Filing No. 21 at 27-28.] On a motion to dismiss, the Court may only consider the Complaint and any documents that are central to plaintiff's claims. Rosenblum v. Travelbyus.com Ltd. , 299 F.3d 657, 661 (7th Cir. 2002) ; Wright v. Assoc. Ins. Cos. Inc. , 29 F.3d 1244, 1248 (7th Cir. 1994) ; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). The documents attached to Wilco's brief are not central to Mr. Couch's claims, and the Court will not consider them at the motion to dismiss stage.

One case cited by Mr. Couch, McMahon v. Transamerica Life Ins. Co. , involved policy language which stated that the insurer "will determine the monthly deduction rate for each policy year at the beginning of that year" and that the monthly deduction rate would not exceed rates set forth in a table. 2018 WL 3381406, *3 (N.D. Ia. 2018). The court denied the insurer's motion to dismiss the plaintiff's breach of contract claim related to the insurer basing the monthly deduction rate on impermissible factors, finding that "[i]t is apparent from the face of the contract that Transamerica cannot consider its past losses in exercising its discretion to set the [monthly deduction rate], and it is plausible that there are other limitations on its exercise of discretion." Id. at *7. While the policy language at issue in McMahon is similar to the language at issue here, this Court is not bound by the McMahon court's decision and finds its analysis unpersuasive, particularly in light of Seventh Circuit precedent to the contrary.

Mr. Couch argues that dismissal of his breach of contract claim related to increasing the COI rate based on impermissible factors is "premature" and that "the policy's complex history calls for discovery to address Wilco's arguments." [Filing No. 25 at 28.] But dismissal is not premature where the plain language of the Policy precludes Mr. Couch's claim. In that sense, a motion to dismiss in the breach of contract context becomes similar to a motion for summary judgment. Where Mr. Couch's allegations and the Policy make clear that Mr. Couch's claim fails as a matter of law, dismissal is warranted.

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint once as a matter of course in response to a motion to dismiss. Brown v. Bowman , 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." Mr. Couch chose not to exercise his right to amend his Amended Complaint pursuant to Rule 15(a)(1)(B) in response to Wilco's Motion to Dismiss but, instead, chose to brief the motion and adjudicate the issues. The Court is not required to give Mr. Couch another chance to plead his claims because he has already had an opportunity to cure deficiencies in his pleadings. See Emery v. American General Finance, Inc. , 134 F.3d 1321, 1323 (7th Cir. 1998). Further, given the plain language of the contract, there is no indication that he could, in fact, successfully amend his Amended Complaint to cure the defects identified above, even if given the opportunity to do so. Consequently, the Court, in its discretion, dismisses Mr. Couch's claims with prejudice.